## BANK OF MIDLAND *v.* HARRIS.

## Opinion delivered June 29, 1914.

1. ABATEMENT—MONEY DEPOSITED AND DUE COUNTY—EFFECT OF PAYMENT
TO COUNTY BY OFFICER.—Where liability has accrued to a county by
reason of a deposit of county funds in a bank, and the failure or
refusal of the bank to pay over on demand, and suit is brought by
the proper officer to recover on behalf of the county, such action
is not abated by the payment of the funds to the county by the
officer who is secondarily liable.

2. BANKS—DEPOSIT OF PUBLIC FUNDS—LIABILITY—ABATEMENT.—Under
Kirby's Digest, § 1990, making the stockholders in a bank primarily
liable for county funds deposited therein, where action has been
commenced for the recovery of the money of the county, the action
does not abate because of the payment of the amount to the county
by those secondarily liable, and may be presecuted to final judg-
ment for the benefit of those who are secondarily liable.

3. COUNTY FUNDS—DEPOSIT—FAILURE TO PAY—LIABILITY OF BANK—SUB-
ROGATION.—The county officer who pays to the county money due
the county in the regular course of his settlement with the county,
is subrogated to the right of the county against the stockholders
of a bank refusing to turn over to him, county funds deposited
therein.

4. SUBROGATION—TRIAL AT LAW—REVERSAL.—Where a cause involving
the right of subrogation was tried at law without objection, and
the law court rendered a correct judgment, the judgment will not
be reversed because the case was tried in the wrong forum.

5. BANKS—DEPOSIT OF PUBLIC FUNDS—LIABILITY OF STOCKHOLDERS.—
The liability of the stockholders of a bank under Kirby's Digest,
§ 1990, for public funds deposited in the bank, dates from the time
the public officer puts the money in the bank for deposit; so when
a county collector with funds in a bank paid the county treasurer
with a check on said bank which the treasurer deposited in the
same bank, only the stockholders who owned stock in the bank
when the treasurer deposited the collector's check, will be liable
for the same to the county.

6. BANKS—DEPOSIT OF PUBLIC FUNDS—LIABILITY OF STOCKHOLDERS.—The
liability of a stockholder for public funds attaches at the time of
the failure or refusal of the bank to pay over on demand.

7. BANKS—DEPOSIT OF PUBLIC FUNDS—LIABILITY OF STOCKHOLDER—
TRANSFER OF STOCK.—Although the legal liability of a stockholder
of a bank in which are deposited public funds under Kirby's Di-
gest, § 1990, attaches only to stockholders at the time the liability
arises, yet, if, after the deposit is made in the bank, and the in-
choate statutory obligation is thus incurred, if a stockholder trans-
fers his stock, not in good faith, but for the purpose of escaping

liability and with knowledge of insolvency on the part of the bank, he will be treated as a stockholder at the time of the default, and accordingly held liable.

8. BANKS—STOCKHOLDERS—TRANSFER OF STOCK—RECORD—LIABILITY OF STOCKHOLDER.—A transfer of stock, without the same being recorded on the books of the corporation, is efficacious to sever the relation between a stockholder and the corporation, if the sale has been made honestly and in good faith, and the vendor has done all that can be required of a careful and prudent business man in order to make such transfer.

9. CORPORATIONS—STOCKHOLDERS—CERTIFICATE OF PRESIDENT AND SECRETARY.—The list of stockholders of a corporation certified by the president and secretary, on file in the county clerk's office is competent evidence for the purpose of showing who are stockholders of the corporation, and is *prima facie* evidence of that fact.

10. CORPORATIONS—COMPLIANCE WITH STATUTE— DE JURE AND DE FACTO EXISTENCE.—A strict compliance with the requirements of the statute is essential to create a corporation *de jure*, but a strict compliance is not essential to the *de facto* existence of a corporation.

11. CORPORATION DE FACTO—LIABILITY OF STOCKHOLDERS.—Where there is a *de facto* corporation, the stockholders thereof are estopped to dispute its legal corporate existence for the purpose of escaping liability.

12. CORPORATIONS—DE FACTO EXISTENCE—LIABILITY OF STOCKHOLDERS.— Where an attempt was made to organize a banking corporation according to law, and the articles of incorporation were drawn up and filed with the county clerk, but were not filed with the Secretary of State, and the corporation undertook thereafter to do business as a corporation, it will be held to be a corporation *de facto*, and the stockholders thereof will be held for public funds deposited therein, and will be estopped to deny the legal existence of the corporation.

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed in part, affirmed in part.

*Read & McDonough,* for appellants, Dyke Bros.

1. The alleged articles of incorporation in the clerk's office were inadmissible. Acts 1905, p. 319; Kirby's Dig., § 845. The stockholders did not become a corporation until after the articles were filed as prescribed by law. 35 Ark. 144; *Ib.* 365. The proper way to prove the corporate existence is by the certificate of the Secretary of State. 35 Ark. 144; *Ib.* 365; 132 Fed.

41; 62 Pac. 386; 70 N. W. 302; 55 Mo. 310; 55 Barb. 45; 46 Ind. 142, etc.

2.   The court erred in admitting the minutes of the meetings.   Kirby's Dig., § 837; 91 Ark. 445; 71 Kan. 558; 140 Fed. 385; 79 *Id.* 906; 123 *Id.* 659; 88 *Id.* 207; 126 N. Y. 113; 26 N. E. 1046; 12 L. R. A. 473; 22 Am. St. 816; Thomp. on Corp., § 1924.

3.   The hearsay evidence of Denman was incompetent and prejudicial.

*C. E. & H. P. Warner,* for W. T. Quinley.

1.   Plaintiff having settled with the county in full, and having ceased to be county treasurer, can not recover.   Kirby's Dig., § § 1990-3; Cook on Corp. (7 ed.), § § 214-218; 192 U. S. 386; 63 Mass. 192; 185 Fed. 192; 97 *Id.* 297; 94 N. Y. 515; 139 S. W. 801.   The doctrine of subrogation can not be invoked.   25 Miss. 73; 29 W. Va. 673; 76 Fed. 673.   But if it could, the right is purely equitable.   Sheldon on Subrogation, § 4; 6 Pom. Eq. Jur., § 922; 33 Ala. 706; 4 Cal. 256; 54 Miss. 683; 60 S. E. 509; 33 Atl. 705.

2.   Quinley was not a stockholder at the time the deposit was made, nor when the bank made default.   97 Ark. 374; Kirby's Dig., § 841; 132 N. Y. 250; 30 N. E. 644; 28 Atl. 719; 75 Pac. 798; 10 Cyc. 738.

3.   It was error to give instruction 6.   An assignment of stock in blank is good.   4 Thomp. on Corp. (2 ed.), § 4317.

4.   The practice of giving conflicting instructions has been repeatedly condemned.   104 Ark. 67; 93 *Id.* 140.

*Winchester & Martin,* for McEachin and Weir.

1.   The best evidence is always required, and secondary evidence is never admissible unless it is the best to be had.

2.   The county had been paid, and Harris was no longer treasurer, and there was no liability.

3.   These appellants were not stockholders when the deposit was made.   Kirby's Dig., § 1990.   See cases cited, *supra,* in appellants' briefs.

*G. C. Hardin,* for appellee, Johnson.

97 Ark. 387, settles appellee's nonliability. Kirby's Dig., § 849. He was *not* a stockholder.

*A. A. McDonald,* for appellee, Harris.

1. *Warren* v. *Nix,* 97 Ark. 374, settles the question as to the right of plaintiff to recover. 51 Ark. 260; 75 *Id.* 288.

2. The incorporation was duly proven. 58 Ark. 98; 71 *Id.* 379; 25 Miss. 73; Kirby's Dig., § § 841-4; 73 Fed. 136.

McCULLOCH, C. J. The plaintiff, as treasurer of Sebastian County, instituted this action against the Bank of Midland, a domestic corporation engaged in the banking business, and its stockholders, to recover the sum of $1,367.51, alleged to have been deposited by plaintiff as treasurer in said bank and which the bank failed or refused to pay over on demand.

The case was tried before a jury, and a verdict was returned against all of the defendants save one, and they appealed to this court. The plaintiff appealed from the judgment in favor of defendant, Johnson.

Plaintiff was elected as treasurer of Sebastian County, and served for the term of two years, ending October 31, 1912. During the time for collection of taxes the tax collector deposited part of his collections in the Bank of Midland, and when he made his settlement with the county court and paid over the county funds to the treasurer he gave that officer a check on the Bank of Midland for the sum of $1,437.51, which the treasurer turned over for credit and deposit in that bank. This occurred on or about the 1st day of July, 1912, and the bank failed on August 7, 1912. A few days thereafter plaintiff, as treasurer, made demand for the funds, and upon failure to pay, he instituted this action before the expiration of his term. He made his settlement with the county, and paid over all the funds due the county, including the amount involved in this controversy, after the expiration of his term, but before the trial of this

case, and when the case came on for trial the defendants sought an abatement of the action on the ground that the stockholders of the bank were liable only to the county, and not to the treasurer personally, and that since the funds had been paid over to the county all liability on the part of the stockholders ceased.

That is the first question presented for our consideration.

(1-2)  Precisely the same condition existed in the case of *Warren* v. *Nix,* 97 Ark. 374, but it does not appear to have been argued as ground for reversal, and the point was not discussed in the opinion.  The stockholders were held liable, however, in that case, and it can be treated as a decision of that proposition of law. We therefore hold, in conformity with that decision, that, where liability has accrued to the county by a deposit of funds and a failure or refusal to pay over on demand, and suit is brought by the proper officer to recover on behalf of the county, such action is not abated by the payment of the funds to the county by the officer who is secondarily liable.  We held in *Warren* v. *Nix, supra,* that the statute makes the stockholders primarily liable, and that where action has been commenced for recovery of the money for the county it does not abate from the payment of the amount, but may be prosecuted to final judgment for the benefit of those who are secondarily liable.

The statute (Kirby's Digest, § 1990) provides that "the said officers and the sureties on their official bonds, the bank and the stockholders of the bank, shall be liable for all funds that such bank on demand shall fail to pay to the person entitled to receive the same."

This refers to the public funds mentioned in the preceding clause of the statute, and, of course, only establishes a liability to the county.

(3)  There can not be direct liability both to the county and to the officer and sureties on his bond, but after the liability to the county has once attached and suit instituted to recover it, such liability is not extin-

guished by a payment made by the officer in the regular course of his settlement with the county. Those who pay under those circumstances are subrogated to the rights of the county against the stockholders of the bank. *Wilson* v. *White,* 82 Ark. 407.

Learned counsel for defendants cite authorities which appear to militate against the right of subrogation under a statute enacted purely for the protection of public revenues.

We think, however, that these authorities have no controlling force in this case, for the reason that they relate merely to the remedy, and hold that there is no subrogation to the remedies given to the public by the statute. It has been held by this court in numerous cases that a tax purchaser under void tax sale is subrogated to the rights of the State for the tax lien which has been discharged, but, of course, the purchaser is not subrogated to the remedies of the State as to a summary sale of the property.

It is also urged that subrogation is an equitable remedy, which can not be invoked at law.

(4) It is, however, sufficient answer to that to say that no objection was made to a trial of this case at law, and if the correct result has been worked out the judgment will not be reversed because the case was tried in the wrong forum. *Wilson* v. *White, supra.*

The defendants who have appealed defended on the ground that they were not stockholders, some of them that they never owned stock in the corporation, and others that they parted with their stock before the liability attached. The defense of each of them presents somewhat different questions and must be discussed separately.

One of the defendants, McEachin, was the principal stockholder and cashier of the bank, and had active management of it up to the time he sold his stock on May 14, 1912. He sold his stock to one I. H. Cunningham by written assignment and executed a power of attorney authorizing the transfer of the stock on the books of the

bank. Cunningham paid for the stock and McEachin immediately ceased all connection with the bank as stockholder. He testified that the bank was solvent at that time, and that it became insolvent solely on account of money of the bank which was taken out by Cunningham after the latter took charge. The transfer was never recorded on the books of the corporation, nor was certificate thereof filed in the office of the county clerk as provided by the statute. I. H. Cunningham and W. R. Cunningham (presumed to be kinsmen, but this is not definitely shown in the evidence), took charge of the bank and managed it up to the time of the failure. I. H. Cunningham was president and W. R. Cunningham cashier. The Cunninghams assumed active management of the bank at the time of the purchase of McEachin's stock, and continued until the bank failed and was placed in the hands of a receiver in August, 1912.

The court, over the objection of the defendants, gave the following instruction:

"3. If you find from the evidence that R. A. McEachin, W. T. Quinley, Amos Johnson, or either or all of them, were stockholders in said Bank of Midland on the dates when said T. A. Harris, as such sheriff and collector, deposited said public funds in said bank, and that they, or either of them, thereafter and before said 7th day of August, 1912, sold or transferred their stock in said bank, notwithstanding said sale, you should find for the plaintiff, if you find that they, or either of them, from their relation with or to said bank, or from knowledge or information with reference to its financial condition knew, or could have known, of its solvency from knowledge or information sufficient to put them on notice that same was solvent at time of the sale of their said stock, if you find a sale was made, and that the bank was insolvent."

(5-6) The law applicable to this case is stated in *Warren* v. *Nix, supra,* and this instruction is clearly in conflict with it. The instruction proceeds upon the theory that if, before the deposit was made, the stockhold-

ers knew that the bank was insolvent, or had such connection with the bank as to put them upon notice of that fact, they could not dispose of the stock so as to escape liability for future deposits. Now, the deposit was made by the treasurer on or about July 1, 1912, which was nearly two months after McEachin had sold his stock to Cunningham. The liability of the county does not relate back to the time that the money was placed in the bank by the collector, for he gave a check to the treasurer on the bank, and there is nothing in this case to show that the check would not have been paid if demanded. In fact, the treasurer himself testified that he placed the check in the bank as a deposit to his credit as treasurer. Therefore, the deposit dates from the time that the treasurer put the check in the bank for credit. If McEachin as a stockholder assigned his stock before that time, and did all that the law required him to do in making the assignment, he was not liable for future deposits made, even though the bank was insolvent at the time he assigned his stock and he knew it. The liability of a stockholder for public funds attaches at the time of the failure or refusal to pay over on demand. In *Warren* v. *Nix, supra,* we said:

"Section 1990 of Kirby's Digest provides that the stockholders of the bank shall be liable for the public funds therein deposited when the bank shall fail to make payment upon demand, and this in effect fixes the time when such liability arises, and that is when default in payment is made; this also determines that such liability is against only those who are stockholders at the time of such default."

(7) Notwithstanding the fact that the legal liability only attaches to those who are stockholders at the time of the default, yet if, after the deposit is made in the bank and the inchoate statutory obligation is thus incurred, if a stockholder transfers his stock, not in good faith but for the purpose of escaping liability and with knowledge of insolvency on the part of the bank, he will be treated as a stockholder at the time of the default,

and accordingly held liable. In other words, the law treats a sale of the stock under those circumstances as fraudulent, and it does not relieve from liability. That, however, is far from holding that a stockholder in a bank can not escape future liability by transferring his stock, regardless of the condition of the bank and his intentions with respect thereto. A stockholder can not, by fraudulent transfer, escape liability for funds already deposited; but he can escape liability for future deposits by transfer of his stock, regardless of the good faith of the transaction, provided there is an actual assignment consummated according to the terms of the statute.

The court was, therefore, in error in giving the third instruction, which made the liability of the stockholders turn upon their knowledge or information of the financial condition of the bank at the time they transferred the stock, even though that occurred before the money was deposited. The fact is uncontradicted that McEachin transferred his stock to Cunningham before the money was deposited; but the transfer was not recorded upon the books of the corporation.

(8) We held in *Warren* v. *Nix, supra,* that a transfer, without the same being recorded on the books of the corporation, was efficacious for the purpose of severing the relations between a stockholder and the bank if a sale of stock has been made honestly and in good faith, and the vendor "has done all that can be required of a careful and prudent business man in order to make such transfer."

There is a very wide conflict in the authorities on this question, but we must treat it as settled by the decisions referred to, and the only question in this case is whether or not the evidence concerning McEachin's transfer of his stock to Cunningham brings it within that rule.

The evidence shows that McEachin had control of the bank when he assigned his stock, he being cashier at the time, and that when he severed his relations by transferring his stock there was no one legally in charge

to record the transfer.   However, he delivered the transfer to I. H. Cunningham, who, together with the other, W. R. Cunningham, immediately took charge of the bank, and the transferree became president.   While it is true that he did not deliver the transfer into the "hands of the proper official to enter same upon the books," for the reason that there was no such official, but he did deliver it to one who was to become such official and who did become such official, and served as such for a period of nearly two months before the deposit was made.   This was done openly, and the business of the bank was openly conducted by the Cunninghams with the implied, if not the express, approval of the other stockholders.

We are of the opinion, therefore, that this evidence shows beyond dispute that McEachin did all that a careful and prudent business man would ordinarily do to consummate the transfer and that he escaped liability for future deposits.

W. T. Quinley, another one of the defendants, sold and transferred his stock to I. H. Cunningham on May 14, 1912, and delivered him a power of attorney containing authority to make the transfer on the books.   Quinley was originally one of the directors, but several years before he sold his stock he had severed his official relations with the bank and had no connection with it except as stockholder and depositor.   He had nothing to do with the management of the bank.   His case is, therefore, a stronger one than that of McEachin, and for the reasons already stated he was, according to the undisputed evidence, not a stockholder within the meaning of the statute at the time the liability of the stockholders attached.

Dyke Bros., a partnership, composed of two brothers of that name, were recorded as being the owners of eleven shares of stock.   Their contention is that certificates had never been issued to them, and that they were not, in fact, stockholders.

We are of the opinion, however, that there is enough evidence to establish the fact that they were stockhold-

ers, and that being true, there is no effort to show that that relation was severed prior to the default of the bank in regard to the public funds.

(9) The list of stockholders, certified by the president and secretary of the corporation, on file in the clerk's office, is competent evidence for the purpose of showing who were the stockholders, and is *prima facie* evidence of that fact.

This list recorded the names of Dyke Bros. as holders of eleven shares of the stock.

A witness, who was formerly connected with the bank at the time of its organization, testified that the stock book of the bank was lost, but that the corporation had purchased a lot of furniture from Dyke Bros. and paid them in shares of stock of the bank.

One of those defendants testified that they were not stockholders and had never been notified of the issuance of any stock to them; but all of that testimony made a question for the jury, and we think it is sufficient to sustain the finding that those defendants were, in fact, stockholders.

H. B. Weir is another one of the defendants who has appealed, and it is contended for him that the evidence does not show that he was a stockholder.

Mr. Weir was certified, on the list heretofore referred to, as the holder of three shares of stock. He testified that he subscribed for shares of stock and gave a check in payment of the amount but that the shares were never actually delivered to him. The evidence was, we think, sufficient to establish the fact that he was, in fact, a stockholder of the bank.

The jury found in favor of defendant, A. S. Johnson. He owned thirteen shares of stock of the bank, which he assigned to McEachin, and the transfer was duly recorded, those shares being part of the stock which was assigned by McEachin to Cunningham.

The registered list shows that defendant Johnson owned another share. He testified that he knew nothing about that, except that Mr. Denman, one of the organ-

izers of the bank, told him that he had given him a share of the stock, but that he never received it or paid for it.

We think there is enough testimony to warrant the jury in finding that defendant Johnson was not a stockholder.

The judgment in Johnson's favor is affirmed, and the judgments in favor of plaintiff against defendants Dyke Bros. and Weir are also affirmed. The judgments against defendants McEachin and Quinley are reversed and the cause as to them is dismissed.

KIRBY, J., dissents as to McEachin and Quinley.

### ON REHEARING.

McCULLOCH, C. J. Counsel for appellants, Dyke Bros., call our attention to the fact that we failed to decide the question raised by them that the proof was incomplete to establish the corporate existence of the Bank of Midland, and it is insisted, for that reason, that the judgment is not supported by sufficient evidence. The opinion of the court is silent on that question and a decision on the petition for rehearing calls for a discussion of that subject.

Dyke Bros. denied the corporate existence of the Bank of Midland, and they were the only ones of the defendants who raised that question. The plaintiff introduced in evidence the original articles of incorporation filed in the office of the county clerk, and also the record made in the office of the clerk, but there was no attempt to prove that the articles had ever been filed in the office of the Secretary of State. The case, therefore, stands, according to the record, as if the articles of incorporation were never filed with the Secretary of State and no certificate of incorporation ever issued by that officer. The proof is undisputed, however, that there was an organization of the bank pursuant to the articles filed in the office of the county clerk, that directors and other officers were duly elected, and that the business was operated thenceforth as a banking corporation.

Our statute provides that before any such corporation shall commence business, the president and directors shall file the articles of association, together with a certificate, setting forth the purposes for which the corporation is formed, the amount of capital stock, the amount actually paid in, the names of its stockholders and the number of shares owned by each, with the county clerk of the county in which the corporation is to have its principal place of business; and also shall file said articles of incorporation and certificate, with the endorsement of the county clerk, in the office of the Secretary of State, and that the latter officer shall, upon the filing of such endorsed articles and certificates and the payment of the fees required by law, issue to the incorporators a certificate of incorporation which "shall be admissible in all the courts of the State as *prima facie* evidence of due incorporation." Kirby's Digest, § 845.

(10) It must be conceded that strict compliance with the requirements of the statute is essential to create a corporation *de jure*. The authorities are unanimous on that proposition. But it is established by the overwhelming weight of authority that strict compliance with all the provisions of the statute is not essential to the *de facto* existence of a corporation.

"The statutory requirements for the organization of corporations," says Professor Thompson, "are generally regarded as conditions precedent to the formation of a corporation, and a substantial compliance is necessary in order to constitute a corporation *de jure*. But in the nature of the case, and under the definition given, if some step in the progress of the organization is unintentionally omitted, and the other requirements are present, there will be a corporation *de facto*. The accidental failure to comply with some legal requirement is one of the elements to the corporate existence *de facto;* otherwise, it would be a corporation *de jure*. A very common omission of strict or substantial compliance is found in the failure either to properly execute, acknowledge or record the certificate of incorporation or articles of as-

sociation. The general rule is that the mere failure to properly execute and acknowledge the certificate or the failure to record the certificate or articles of association will not be fatal to the existence of a corporation *de facto,* where the other elements are present." 1 Thomp. Corp. (2 ed.), § 234.

Further on in the same volume (section 255) the learned author says: "Not only is the corporation itself bound, but its officers and stockholders, or other persons interested, as well as those who have dealt with the pretended corporation with knowledge of a claim of corporate capacity, are not permitted to set up either for themselves, or on behalf of the corporation, any irregularity in the organization, for the purpose of either shielding the corporation, or of freeing themselves from personal liability. The certificate of incorporation is made for the benefit of the public, and neither for the corporation nor its stockholders."

Another text writer on the subject states the rule broadly that "the corporation is a *de facto* corporation where there is a law authorizing such a corporation and where the company has made an effort to organize under the law and is transacting business in a corporate name." 1 Cook on Corporations (7 ed.), § 234.

Still another text writer states the same rule in the following language: "Cases not seldom arise in which some condition precedent to the legal organization of a corporation has been omitted, and in which no conclusive certificate of due incorporation exists, and in which no estoppel to deny the company's existence can be invoked. In such cases, the American courts generally will, under certain conditions, hold that the association although not legally incorporated, is nevertheless a corporation *de facto,* that is to say, an association whose right to corporate functions and attributes is complete as against all the world except the sovereign." 1 Machen on the Modern Law of Corporations, § 284.

To the same effect see Helliwell on Stock and Stockholders, § 438.

The text writers fortify their conclusions with numerous citations of authorities, showing beyond peradventure that this is the generally established rule.

Judge Battle, in delivering the opinion of the court in *Forbes* v. *Whittemore,* 62 Ark. 229, recognized that principle by using the following language: ''They (the parties who were attempting to escape liability as they were stockholders) never undertook to organize themselves into a corporation, and were not a corporation *de facto.''*

This court decided in the case of *Garnett* v. *Richardson,* 35 Ark. 144, that where the act of incorporation was incomplete by reason of the same defect in this case (*i. e.,* not filing the articles with the Secretary of State), the incorporators were personally liable as partners. That decision seems to be against the weight of modern authority, and the doctrine of it should not be extended any further. It does not follow that the corporation itself would not also be liable as a *de facto* corporation, nor that statutory liability of incorporators would be unenforceable.

(11) We have here a case of statutory liability of the stockholders for public funds borrowed from the bank, and the rule stated by the text writers undoubtedly is conclusive that where there is a *de facto* corporation the stockholders are estopped to dispute its legal corporate existence for the purpose of escaping liability.

(12) We hold, therefore, that the proof in this case was sufficient to establish a *de facto* existence of the corporation and that the stockholders are liable for the public funds deposited in the bank while doing business as such corporation, they being estopped to deny the legality of the corporate existence.

It is also insisted that we erred in holding that the evidence was sufficient to show that Dyke Bros. were stockholders. They were not mentioned as stockholders in the original certificate to the articles of incorporation, but were listed as stockholders in an annual certificate filed by the president and secretary pursuant to the

terms of section 848 of Kirby's Digest, which provides that the president and secretary of every such corporation shall annually make a certificate showing, among other things, the amount of capital actually paid in, and the name and number of shares of each stockholder. We said in the former opinion in this case that such certificate was *prima facie* evidence of the facts therein recited, and also that the testimony of one of the witnesses introduced by the plaintiff tended to show that Dyke Bros. were stockholders. We adhere to that conclusion.

It is insisted that the testimony of the witness referred to was purely hearsay, and therefore inadmissible, but, after a careful re-examination of it, we think that the testimony as it appears in the record is not altogether hearsay. The statements of the witness are to some extent contradictory, and in some places appear to be statements of fact within his own knowledge and at other places mere hearsay. We can not, however, from a perusal of the statements of the witness, say definitely that all of it is hearsay, for we think that was a question for the determination of the court and jury who heard the witness testify in person and could better judge of his statements as to personal knowledge of facts which he attempted to relate.

Rehearing denied.

HART and KIRBY, JJ., dissenting.