## HILL v. KAVANAUGH.

### Opinion delivered April 5, 1915.

1. TRIAL—EFFECT OF BOTH SIDES ASKING PEREMPTORY VERDICT.—When both sides ask the court for a peremptory verdict in their favor and request no other instructions, the finding of the court is final and has the same effect as the verdict of a jury.

2. BANKS AND BANKING—PUBLIC FUNDS—DEPOSIT BY PUBLIC OFFICER IN OWN NAME—LIABILITY OF STOCKHOLDERS.—A., as county treasurer deposited county funds in the T. bank, in his name as treasurer. Shortly thereafter he had the account changed to his name individually so that he could himself claim the accrued interest on the deposit. The bank's affairs becoming involved, A. a short while before the bank was placed in a receiver's hands, had the account transferred back to himself as treasurer. In an action by A. against the stockholders of the bank to recover the amount of the deposit from them, on the statutory liability of stockholders for public funds; held, that A. having paid the money to the county could recover from the stockholders only on the theory of subrogation, and as the parties had always intended that the deposit be treated as A.'s individually, he could not undertake to recover on the ground that the deposit was public money.

3. ACTIONS—EQUITABLE ACTION TRIED AT LAW.—When a cause, properly cognizable in equity, is tried at law without objection, and judgment rendered upon proper equitable principles, the judgment will upon appeal, be affirmed.

Appeal from Miller Circuit Court; *G. R. Haynie,* Judge; affirmed.

*J. M. Carter,* for appellant.

1. It is proven and not denied that this money deposited by appellant in the Texarkana Trust Company bank was of the public funds of Miller County, and that this company failed and refused to pay it. It is admitted that defendants were stockholders in the trust company both at the time the deposit was made and when it failed. The bank knew that these were public funds because its cashier solicited the treasurer to make the deposit as treasurer. The shifting or changing of the bank's records in no way changed the nature or ownership of the funds. The stockholders are liable. 97 Ark. 385.

2. We do not think a preponderance of the evidence shows that the county has been reimbursed, but, if so, then

appellant is subrogated to all the rights the county had against the stockholders. 31 Ark. 421; 37 Cyc. 414 and note; 138 Ky. 201; 40 Ark. 138; 110 U. S. 729; 82 Ark. 407; 41 Ark. Law Rep. 351.

3. Appellees entered no equitable defense against the right of subrogation, neither did they move to transfer to equity. They can not now object to the circuit court's retaining jurisdiction. Kirby's Dig., § § 5991, 5993, 5994; 31 Ark. 422; 74 Ark. 85; 28 Ark. 458.

*Frank S. Quinn, W. H. Arnold* and *Webber & Webber,* for appellees.

1. The undisputed evidence shows that appellant in his settlement of July 6, 1914, with the county court, accounted for all funds, for all purposes, and the court on that day counted the moneys and found that he had in his hands all sums with which he was chargeable as treasurer. Therefore, at the date of the filing of the suit neither the county nor appellant as treasurer, had any cause of action against the stockholders of the bank.

If he had any right of action against them, it was as an individual and by way of subrogation to the orignal rights of the county, and the chancery court alone had jurisdiction. 82 Ark. 407-412. Therefore, the case is to be decided according to principles of equity.

2. The facts developed in evidence show that appellant does not come with the clean hands required of one who goes into equity seeking relief.

If the funds he deposited in the bank were county funds, he was speculating thereon in drawing interest on the deposit, and puts himself in the attitude of asking equity to relieve him from the unforeseen and disastrous result of an illegal contract. If the funds were an individual deposit while drawing interest, and, by manipulation of the account, the word "treasurer" was added on the day the bank was closed, changing the character of the transaction from an individual deposit to one of public funds, appellant and the cashier were parties to an unauthorized and wrongful combination to give him an unlawful advantage over other depositors, and to impose

upon the stockholders a statutory liability that they had neither contemplated nor assumed. 47 Ark. 301, 311; 53 Ark. 150; 67 Ark. 480.

3. Aside from the principles of equity applicable to the doctrine of subrogation, the only question involved in this appeal is as to the weight of the evidence, and as to that, both sides having requested a directed verdict, the court's finding is conclusive. 100 Ark. 7; 105 Ark. 25; 87 Ark. 109; 97 Ark. 438; *Id.* 486; 101 Ark. 120; 102 Ark. 200; 103 Ark. 260.

McCULLOCH, C. J. (1) Appellant was treasurer of Miller County and instituted this action against the appellees, who were stockholders of a defunct banking institution known as the Texarkana Trust Company, to recover the amount of certain funds alleged to have been deposited as the county funds in that institution. The facts are undisputed and the court gave a peremptory instruction in favor of appellees. Even if there had been any substantial conflict in the testimony, all doubt would have to be resolved in favor of the court's finding, in as much as both sides asked for a peremptory instruction without requesting the court to give any instructions submitting the issues to the jury. *St. Louis S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71.

· The facts are that appellant deposited in the Texarkana Trust Company the sum of $2,500 on August 1, 1913, and the same was credited to him on the books of the bank as treasurer, and a pass book was delivered to him. A few days thereafter, he decided to change the deposit to a personal one in his own favor, and by agreement with the cashier the word treasurer was erased from the bank ledger, the pass book showing the deposit in his name as treasurer was surrendered and a new pass book was issued to him showing the deposit to be an individual one in his own name. Three months thereafter the bank allowed him a credit because of interest on the deposit, and the credit was placed on his individual pass book. The bank was found to be insolvent in November, 1913, and on the 12th day of that month the bank was placed in the

hands of a receiver by order of the chancery court of Miller County. On the day the doors of the bank were closed and the receiver appointed about thirty minutes before that occurrence, one of the witnesses testified that appellant and the cashier made an agreement that the deposit should be charged back to the account of appellant as treasurer so as to give him security by reason of the statutory liabilty of the stockholders for deposit of public funds (Kirby's Dig., § 1990), and pursuant to that agreement, the cashier added the word "treasurer" to the account on the ledger and also on the pass book.

It is therefore established by the uncontradicted evidence that the funds deposited were in fact public funds in the hands of appellant as treasurer, and were originally deposited in his name as treasurer; the deposit was changed to conform to the real intention of the parties so that it could be treated by the bank as an individual deposit, and interest thereon allowed to appellant individually in conformity with the custom of the bank to allow depositors interest. Appellant accounted for the funds to the county before the commencement of this suit. We are of the opinion that appellant was not entitled to recover from the stockholders of the defunct bank by imposing on them the statutory liability, and the court was correct in giving a peremptory instruction. The county had no cause of action at the time this action was commenced for the simple reason that the funds had been accounted for by appellant.

(2-3) In *Bank of Midland* v. *Harris,* 114 Ark. 344, 170 S. W. 67, the facts were that the treasurer brought suit against the stockholders of a defunct bank to recover public funds in his custody, deposited with the bank, and he was allowed to recover notwithstanding the fact that he had accounted to the county for the funds after the commencement of the action. It was held that the action did not abate by the payment of the county funds, and that the officer, who was the custodian of the funds, had a right of action to recover the amount after he had paid the same over on settlement. We said that

the right of recovery was based on the equitable principle of subrogation. That, however, was a case where the funds were in fact and in form deposited as public funds. It is unnecessary in this case to decide whether or not the mere fact that the payment was made before the institution of the suit would defeat the right of subrogation, for we can base our conclusion on the broader ground that the parties intended this in fact as an individual deposit for the purpose of enabling appellant to reap the fruits of such deposit by way of interest, and he can not now treat it as a deposit of public funds. The statute permits him to deposit funds in incorporated banks for safe-keeping, but it was manifestly in contemplation of the law-makers that the funds should be deposited as public funds. The deposit made by appellant in his own name, for the purpose of collecting interest, was not a lawful deposit in conformity with that statute. We do not mean to say that it is necessary that the deposit be in form so as to show that it is public funds in order to impose liability on the stockholders, for we held, in the recent case of *Black* v. *Special School District No. 2,* 116 Ark. 472, 173 S. W. 846, that school funds deposited by a board of school directors would be treated as public funds in the hands of the treasurer, the lawful custodian, and that the latter could recover the amount from the stockholders. There is no question involved in the present case of the right of the county to recover from the stockholders, for, as already shown, the county has sustained no loss. Appellant is trying to recover for his own benefit, and must do so, if at all, upon the equitable doctrine of subrogation. Now, equity aids only those who come into court with clean hands, and it can not be said that appellant was in that attitude after having entered into an agreement with the cashier of the bank to treat the deposit as an individual one so that he could reap the fruits of it. Though the deposit was made as treasurer, and the fund was not in fact checked out, the surrender of the pass book and the change of the form of the account by agreement with

the cashier, was equivalent to drawing the money out and redepositing it. *Cunningham* v. *State,* 115 Ark. 392, 171 S. W. 885.  The deposit stood as an individual one until the bank became insolvent, and appellant then, for the sole purpose of imposing liability on the stockholders, entered into the agreement with the cashier for the change of the nature of the deposit.  It was too late for him to do that after having accepted the benefits of the deposit as an individual one, and it would not be in accordance with the principles of natural justice to permit him to shift the deposit at that time so as to impose a liability on the stockholders.  We have said in this class of cases that where the cause was tried without objection in the law court, it should be disposed of, nevertheless, according to principles of equity.  *Wilson* v. *White,* 82 Ark. 407; *Bank of Midland* v. *Harris, supra.*  This case was tried in a court of law without any question being raised, but the case was correctly decided upon the undisputed facts, and the judgment should therefore be affirmed.  It is so ordered.

KIRBY, J., dissents.