STEED v. HENRY, COUNTY TREASURER.

Opinion delivered November 8, 1915.

1. REMOVAL OF CAUSES—POWER OF STATE COURT.—Though issues of fact arising on controverted allegations in a petition for removal are

only triable in the Federal court, the State court may deny the petition if it is insufficient on its face.

2. REMOVAL OF CAUSES—FACE OF RECORD—RIGHT OF STATE COURT.—If upon the face of the record, including the petition for removal, a suit does not appear to be removable, then the State court is not bound to surrender its jurisdiction and may proceed as if no application for removal had been made.

3. ACTIONS—WHEN SEPARABLE—REMOVAL.—When several defendants are sued jointly on a cause of action that is either joint or several at the election of the pleader, one of the defendants can not elect to treat the cause of action as separable as to him, and remove it to the Federal court.

4. PUBLIC FUNDS—DEPOSITORY LAW—BENTON COUNTY—STOCKHOLDER'S LIABILITY.—Act 113, Acts 1905, p. 301, the depository act for Benton County, providing that all the stockholders of a bank in which public funds were deposited, shall be liable for the public funds that such bank should fail to pay over on demand to the person entitled to receive the same, held to create a joint and several liability against all the stockholders.

5. PUBLIC FUNDS—BANK—LIABILITY OF STOCKHOLDERS—REMOVAL.—In an action against all the stockholders of a bank, under Act 113, Acts 1905, p. 301, on account of public funds deposited in said bank, it is error to remove the cause of action against two of the stockholders to the Federal court, on the ground of diversity of citizenship.

6. PUBLIC FUNDS—LIABILITY OF STOCKHOLDERS OF DEPOSITORY BANK.—Act 113, p. 301, Acts 1905, entitled "An Act to provide a depository for the county funds of Carroll, Benton and White counties," and fixing the liability of stockholders of a depository bank, *held* valid, and not to have been replaced by the general banking law of 1913. (Act 113, p. 462, Acts 1913).

7. PUBLIC FUNDS—CLOSING OF DEPOSITORY BANK—WHO MAY SUE.—The county treasurer of Benton County had deposited public funds in a depository bank. When the bank suspended payment, suit was brought against its stockholders for the amount of the public funds, in the name of the State of Arkansas for the use and benefit of Benton County, and N. S. Henry, treasurer of Benton County. *Held*, it was not error, when thereafter the suit was dismissed as to the State for the use of Benton County, for the court to permit the suit to proceed in the name of N. S. Henry, as treasurer of Benton County, as sole plaintiff.

8. STOCKHOLDERS—RELATIONSHIP—HOW PROVED—CORPORATE BOOKS AS EVIDENCE.—Corporate books alone are not *prima fecie* evidence of a contract of membership, and are not admissible against a person denying his liability as stockholder.

9. STOCKHOLDERS—LIST FILED WITH COUNTY CLERK.—The list of stockholders certified by the president and secretary of a corporation

and filed in the clerk's office, is competent evidence for the purpose of showing who are stockholders and is *prima facie* evidence of that fact.

10. STOCKHOLDERS—RELATIONSHIP—PROOF OF.—The evidence held to show that certain defendants were stockholders in an insolvent bank, and such fact being established that the said defendants were not prejudiced by the action of the court in admitting the private records of the bank, as proof to show that they were stockholders.

11. CORPORATIONS—FRAUDULENT TRANSFER OF STOCK.—Evidence held to show that one M. transferred his stock in a certain bank, knowing the same to be in a failing condition, and to escape a statutory liability as a stockholder thereof.

12. STOCKHOLDERS—PROOF OF RELATIONSHIP.—Evidence held insufficient to show that one P. was a stockholder in a certain bank 'at the time that it suspended payment.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; reversed, as to appellant Plater; affirmed against other appellants.

STATEMENT BY THE COURT.

The Bank of Rogers was a banking corporation doing business in Benton County, Arkansas. By virtue of the provisions of Act No. 113 of the Acts of 1905, it was designated as a depository of the public funds of Benton County. N. S. Henry, treasurer of Benton County, deposited public funds to the amount of $49,819.68, and that amount was on deposit there on the 16th day of July, 1914, and on that day the bank closed its doors and was placed in the hands of the Bank Commissioner for the State of Arkansas as an insolvent bank.

Section 4 of the depository act for Benton County provides that the stockholders of the bank shall be liable for all public funds that such bank shall fail to pay over on demand to the person entitled to receive the same. Acts of 1905, page 301.

The treasurer of Benton County made demand for the funds deposited there by him, and upon refusal of payment, instituted this action in the Benton Circuit Court against the stockholders of the bank to recover the same. The facts proved will be stated and discussed under appropriate headings in the opinion.

The jury returned a verdict in favor of the treasurer for the amount sued for, and from the judgment rendered certain of the stockholders have duly prosecuted this appeal.

*Dick Rice,* for appellants W. R. and W. B. Felker.

1. There is no legal evidence that appellants were stockholders. Neither the corporation's annual certificate, nor the stock book, were competent evidence. 97 Ark. 347; 97 Ark. 374; 114 Ark. 344; Kirby's Digest, § 848; 54 Pac. 1051; 10 Cyc. 519; 81 Pac. 200; 10 Hun, 56; 91 Pac. 874.

2. No demand was made as required by law. Acts 1905, p. 303; 97 Ark. 347.

*E. P. Watson* and *C. W. Wilson,* for appellant, H. H. Steed.

1. The court had no jurisdiction after the petition for removal was filed and granted. 50 Ark. 388; 103 U. S. S. C. 213; 103 U. S. 485; 222 *Id.* 164; 196 *Id.* 241; 148 Fed. 308; 122 *Id.* 514.

2. The cause was not separable and the entire cause should have been removed to the United States Court. 103 U. S. 205, l. c. 213-216; 9 Biss. l. c. 133; 2 Foster Fed. Proc. (5 ed.), 1787, § 541.

3. The jurisdiction of the Federal Court was exclusive. 196 U. S. 241; 2 Foster Fed. Proc. (5 ed.), 1883-4, § 554, etc.

4. It was error to allow the so-called amendment and allow the suit to progress in the name of Henry, as treasurer.

*W. N. Ivie,* for appellant, J. S. Miller.

1. The evidence fails to show that appellant was a stockholder when the bank failed. 97 Ark. 374; 114 Ark. 344. No demand was made according to law.

2. Appellant had sold his stock in good faith and without fraud. 97 Ark. 388; 114 Ark. 344; 109 Ark. 169.

*E. P. Watson,* for appellant, John S. Plater.

There is no evidence that appellant was a stockholder. 23 Am. & Eng. Enc. (1 ed.), 637, 590; 26 *Id.* (2 ed.), 896;

5 Sm. & M. 515; 18 Barb. (N. Y.) 152; 76 Ark. 140; 21 *Id.* 95; Benjamin on Sales, 858; Kirby's Digest, § 849; 10 Cyc. 556, 517.

*Rice & Dickson,* for appellee.

1. This cause is separable. There was a separate liability of each stockholder. The court had jurisdiction after removal as to Fratt and Roblee. 103 U. S. 216.

2. The State was not a proper party and its name was properly stricken out. The treasurer alone was entitled to recover. 116 Ark. 472.

3. Miller was liable. The sale of his stock was fraudulent. 114 Ark. 344.

4. Plater was a stockholder and liable. 97 Ark. 374.

5. The verdict is not excessive, and there is no error in the instructions.

HART, J., (after stating the facts). Two of the defendants, Frederick W. Fratt and J. T. Roblee, who are residents of the State of Missouri, filed a petition for the removal of the cause from the Benton Circuit Court to the United States District Court, and as grounds therefor alleged that they were citizens of the State of Missouri, and that the present suit was a separable controversy within the meaning of the acts of Congress providing for the removal of causes from the State to the Federal Court.

The other defendants are residents of the State of Arkansas, and did not join in the petition for removal.

The circuit court granted the petition of Fratt and Roblee, but retained jurisdiction as to the other defendants.

(1) It is now claimed by counsel for appellants that the court had no jurisdiction to proceed further with the cause after the petition for removal was filed. Though issues of fact arising on controverted allegations in a petition for removal are only triable in the Federal Court, the State court may deny the petition if it is insufficient on its face. *Chicago, R. I. & P. Ry. Co.* v. *Dowell,* 229 U. S. 102; *Chesapeake & Ohio Ry. Co.* v. *Cockrell, Admr.,* 232

U. S. 146; *Iowa Central Ry. Co.* v. *Bacon, Admr. of Lockhart,* 236 U. S. 305.

(2)   In the last cited case the court said: That if upon the face of the record, including the petition for removal, the suit does not appear to be removable, then the State court is not bound to surrender its jurisdiction, and may proceed as if no application for removal had been made.

(3-4)   We do not think the case presents a separable controversy.   The mere fact that a suit might have been brought against each one of the defendants separately or against them jointly does not determine whether a separable controversy exists.   When several defendants are sued jointly on a cause of action that is either joint or several at the election of the pleader, one of the defendants can not elect to treat the cause of action as separable as to him and remove it to the Federal Court.   The present suit was not capable of separation into parts, the defendants asking for a removal, being alone interested in one part and the remaining defendants alone interested in another part.   The statute under which the suit was brought provided that all of the stockholders of the bank should be liable for the public funds that such bank should fail to pay over on demand to the person entitled to receive the same.   The act creates a joint and several liability against all the stockholders.

(5)   In deciding a similar case, the United States Circuit Court of Appeals of the First Circuit held:

"A suit by several creditors of an insolvent bank to enforce the statutory double liability of stockholders, which prays an accounting in favor of all creditors and a pro rata payment to them, with repayment to stockholders in case of a surplus, does not present a case of separable controversy as to the rights of a single nonresident stockholder, which the latter may remove to the Federal Court."   *Miller* v. *Clifford,* 67 C. C. A. 52, 133 Fed. Rep. 880, 5 L. R. A. (N. S.) 49, and case note. See, also, *Alabama G. S. R. Co.* v. *Thompson,* 200 U. S. 206, and Moon on Removal of Causes, section 142.

It follows that the court erred in removing to the Federal Court the causes of action as to the defendants Fratt and Roblee. Appellants were not prejudiced by this action, however, for the court retained jurisdiction of the cause against them and heard and determined same. Whatever right of contribution, if any, they may have against Fratt and Roblee still exists. As it is well settled that this court only reverses for errors that are prejudicial to the substantial rights of appellants, the judgment will not be reversed because the court erred in removing to the Federal Court the case as to Fratt and Roblee.

(6) Counsel for appellants contend that the statute under which this action was brought is invalid. The suit was instituted under Act No. 113 of the Acts of 1905, entitled, "An act to provide a depository for the county funds of Carroll, Benton and White counties." The act was a special one, and is valid. The liability of a stockholder in a bank designated as a depository of county funds of Benton County is governed by section 4 of the act which provides that all stockholders of any such bank shall be liable for all public funds which such bank shall fail to pay over on demand to the person entitled to receive the same. The general banking act of 1913, which makes stockholders of a bank equally and ratably liable for the debts of a bank to the extent of the par value of their stock in addition to the amount invested therein did not repeal this special act. (Act 113, p. 462, Acts 1913.) *Roberts* v. *State, use, etc.,* 116 Ark. 410, 172 S. W. 1039.

(7) The suit was at first brought in the name of the State of Arkansas for the use and benefit of Benton County, and N. S. Henry, treasurer of Benton County, against the defendants. Subsequently the suit was dismissed as to the State of Arkansas for the use of Benton County, and proceeded in the name of N. S. Henry as treasurer of Benton County as the sole plaintiff.

It is contended by counsel for the defendants that this was a substitution of parties plaintiff which calls for a reversal of the judgment. We do not think so. Under

the authority of the *Bank of Midland* v. *Harris,* 114 Ark. 344, 170 S. W. 67, the treasurer of Benton County, being the custodian of the funds, had a right to bring the suit and his bringing it also in the name of the State of Arkansas for the use of Benton County was mere surplusage. There was no error in dismissing the case as to it and permitting the action to proceed in the name of the treasurer of Benton County. See, also, *Black et al.* v. *Special School Dist. No. 2,* 116 Ark. 472, 173 S. W. 846.

It is also contended that the judgment was for too much. The record shows that after the bank was placed in the hands of the Bank Examiner, the officials of the bank gave to the county treasurer several thousand dollars in Benton County warrants, and it is claimed that the judgment should be reduced by the amount of these warrants. The record, however, further shows that suit was brought by the State Bank Examiner against the treasurer to recover these warrants, and that a decree was rendered in his favor therefor. It follows that the judgment should not be reduced by the amount of these warrants.

(8) It is next contended that the court erred in permitting the introduction of books of the corporation to show who were stockholders, and in this contention we think counsel are correct. In the case of the *Bank of Midland* v. *Harris, supra,* we held that under section 1990, Kirby's Digest, making bank stockholders liable upon the failure to pay over county funds upon demand, a list of the stockholders certified to by the president and secretary, and on file in the clerk's office, is *prima facie* evidence of who are stockholders. We do not think, however, that the doctrine should be extended to make the mere fact that a person's name is upon the books of a corporation as a stockholder *prima facie* evidence that such person is a stockholder of the corporation. The doctrine that the stock books or other records of a corporation are *prima facie* evidence to prove who are stockholders is supported by the Supreme Court of the United States and by other courts of last resort, but is severely criti-

cised by Mr. Thompson in his work on corporations. We think his criticism is just, and that the rule adopted by him is in accord with reason and justice. The learned author says:

"This doctrine has been severely criticised as both unjust and dangerous; unjust in that it would prove or tend to prove a relation never assumed, and a contract never entered into; and dangerous because a secretary or other officer of a corporation, by entering a man's name as a stockholder on the corporate books, might, without his knowledge or consent, make him a stockholder; and when countervailing proof has become impossible by reason of death, or other circumstances, such unauthorized act might charge him or his estate with a burden he never assumed. The better rule undoubtedly is that corporate books alone are not even *prima facie* evidence of a contract of membership, and are not admissible against a person denying his liability as stockholder; they can not be received as the sole dispositive evidence of any such disputed fact. In order to render such books and records admissible, it should be shown by some competent witness that such books are kept in the ordinary course of business, and that the entries made therein were made in the due and ordinary course of business; and either that certificates of stock were issued and delivered to the person sought to be charged, or that he took part in the meetings of stockholders during the period of time his name appeared upon the books, or both. The book or record should be supplemented by identifying testimony. Where the relation of shareholder has been otherwise shown to exist, the books of the corporation then become admissible to aid in determining when it commenced and what, if anything, has been paid upon the subscription." Thompson on Corporations (2 ed.), vol. 2, section 1857.

Our holding, however, does not call for a reversal of the judgment against all of the appellants for the reasons hereinafter given.

(9) For instance: The Bank of Rogers was organized in 1912, and the certificates filed by the president and

secretary on the 12th day of February, 1914, shows that
W. R. Felker and W. B. Felker were stockholders of the
corporation, and, as we have already seen, this court held
in the case of *Bank of Midland* v. *Harris, supra,* that the
list of stockholders certified by the president and secre-
tary of a corporation and filed in the clerk's office is com-
petent evidence for the purpose of showing who are stock-
holders, and is *prima facie* evidence of that fact.

Moreover, the record shows that the Felkers organ-
ized the bank and were actively connected with its affairs
from that time until it closed its doors.  W. R. Felker was
vice president at the time it ceased to do business.  There
is evidence tending to show that they were large stock-
holders, but that they disposed of a large part of their
stock.   It is not necessary to determine whether this dis-
position of stock was fraudulently made that they might
escape liability as stockholders, for we think there is suffi-
cient evidence to show that they were small holders of
stock at the time the bank closed its doors.

For instance, the undisputed evidence shows that at
the time the bank was closed, W. R. Felker was a director
and vice president and that W. B. Felker was secretary
of the corporation.  The assistant cashier who testified
to this fact also said that on February 11, 1913, twenty-
five shares of the stock of the bank were issued to W. B.
Felker, and that this was put up as collateral to a bank
in Illinois, and were owned by him when the bank closed
its doors.  The witness also testified that five shares of
stock were issued to W. R. Felker on December 31, 1913,
and that he owned this stock at the time the bank closed
its doors.

(10)   The Felkers did not themselves take the wit-
ness stand so far as the record discloses, and did not in-
troduce any testimony whatever relative to the stock we
have just referred to.   They only introduced testimony
tending to show that they had disposed of some other
large amounts of stock which they held.   Therefore, it
will be seen that so far as the Felkers are concerned, the
undisputed evidence shows that they were stockholders

in the bank at the time it closed its doors, and so could not have been prejudiced by the action of the court in admitting the private records of the bank as proof to show that they were stockholders.

The certificate of the president and secretary filed in the clerk's office in January, 1914, shows that appellant Steed was a stockholder. It is also shown that he did not make any disposition of his stock after that time. No evidence was introduced on the part of Steed tending to show that he was not a stockholder on the date mentioned, and none was introduced by him tending to show that he afterward sold or otherwise disposed of his stock. Therefore, the undisputed evidence shows that he was a stockholder at the time the bank closed its doors, and he was not prejudiced by the action of the court in admitting the private records of the corporation to prove that he was a stockholder.

(11)  The certificate of the president and secretary filed in the county clerk's office also shows that the appellant Miller was the owner of stock in the corporation on the 12th day of February, 1914. This fact is admitted by Miller. Therefore, he was not prejudiced by the admission of the private books of the corporation to prove that he was a stockholder. Miller's only defense was that he had sold his stock and ceased to be a stockholder at the time the bank closed its doors. Therefore, he claims that he is not liable under the statute. It is claimed, however, by counsel for the treasurer, that Miller transferred his stock for the mere purpose of evading his statutory liability for the corporate debts, and that on that account the transfer was fraudulent and void as to the corporation's creditors. Counsel for the treasurer asked that Miller be treated for the purpose of the statutory liability as a stockholder, and held liable as prescribed in the statute. See *Bank of Midland* v. *Harris, supra; McDonald* v. *Dewey*, 202 U. S. 510, 6 Am. & Eng. Ann. Cas. 419, and case note.

Miller testified in his own behalf that he sold his stock in the bank before it closed its doors, and that at the time

he sold it he did not know that the bank was in a failing condition, and that the sale was made honestly and in good faith, and not for the purpose of evading his statutory liability as a stockholder. Other evidence was introduced by him tending to corroborate his testimony, but we need not set this testimony out for his contention in this respect was decided adversely to him by the jury which found that his transfer of stock was made for the purpose of evading his statutory liability as a stockholder. We are of the opinion that the testimony was sufficient to warrant that finding. The transfer was made just a few days before the bank closed its doors, and the person who bought it said that at that time he had heard that the bank was in a failing condition, and that he supposed Miller knew of that fact.

Other testimony tends to show that every other person who had any connection with the bank or was interested in its affairs, knew that the bank was reputed to be in a failing condition, and other circumstances introduced in evidence tend to show that Miller had knowledge of the failing condition of the bank. Without setting this evidence out in detail, we are of the opinion that there was sufficient evidence to warrant the jury in finding that Miller made a fraudulent disposition of his stock.

(12)   The appellant John S. Plater testified in his own behalf, and positively denied that he had ever owned any stock in the corporation. He testified that Talley, the president of the bank, had approached him with a view of selling him stock in the corporation, and that for a time he considered buying the stock, but that he finally concluded not to do so, and that there had never been any completed sale of the stock of the corporation to him. His testimony in this regard was positive and direct. In order to show that he was a stockholder in the corporation, it was shown that he had given a proxy to be voted at a corporate meeting. Plater explains this by saying that he did this at the instance of Mr. Talley, and that it was not understood then between him and Talley that he had purchased any stock in the corporation.

As further proof that he owned stock in the bank, the private records of the corporation were introduced, showing him to be a stockholder. As we have already seen, this evidence was not competent for that purpose for the reason that it is not shown by whom the record entries were made, or that they were made in the ordinary course of the business of the corporation. The records were found among the papers of the corporation and without further identifying testimony were not sufficient to show that appellant Plater was a stockholder in the corporation.

It is obvious that the admitted records were prejudicial to the rights of Plater, and for that reason the judgment against him must be reversed and the cause of action against him remanded for a new trial.

The judgment against the other appellants will be affirmed.