STATE BANKING BOARD et al. v. PILCHER. (No. 641-4105.)

(Commission of Appeals of Texas, Section A. April 8, 1925.)

1. **Banks and banking** ⚊15—**Statutes fixing time for claim against guaranty fund and suit thereon must be affirmatively pleaded.**

Rev. St. arts. 463, 464, as to time for presentation of claim against state guaranty fund and institution of action thereon, are statutes of limitation, and must be affirmatively pleaded by defendant to constitute defense.

2. **Banks and banking** ⚊15—**Owner of interest-bearing deposit cannot participate in guaranty fund.**

Under Rev. St. art. 486, owner of interest-bearing time deposit cannot participate in state guaranty fund, especially in view of articles 512, 515.

3. **Banks and banking** ⚊15—**Change of interest-bearing to noninterest-bearing deposit held fraud on state guaranty fund.**

Acts of bank officers and depositor in changing interest-bearing time deposit to open noninterest-bearing deposit, while bank was insolvent and hence prohibited from receiving deposits by Rev. St. art. 554, and officers contemplated insolvency under article 551, held void as fraud on state guaranty fund.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by L. P. Pilcher against the State Banking Board and others. Judgment for plaintiff was affirmed by Court of Civil Appeals (256 S. W. 996), and defendants bring error. Reversed and rendered.

W. A. Keeling, Atty. Gen., and John W. Goodwin and Walace Hawkins, Asst. Attys. Gen., for plaintiffs in error.

Wood & Wood, of Sherman, for defendant in error.

CHAPMAN, J. For several years prior to July 8, 1921, the First Guaranty State Bank of Collinsville had been doing a general banking business at Collinsville, Tex., and had been operating under the Texas banking laws and the state guaranty fund. For some two years prior to the last-named date one L. P. Pilcher had left with said bank $6,000 as an interest-bearing time deposit; the certificate of deposit having been renewed and reissued each six months. The last renewal was made on the date above mentioned, and on that date there was issued by the bank to Pilcher an interest-bearing time deposit certificate for $6,000, payable to the order of Pilcher on December 31, 1921, on the return of the certificate properly indorsed and provided for interest at 4 per cent. per annum if left 6 months. On December 23, 1921, the cashier of the bank went to Pilcher's son about the account, and asked him if his father did not have some money on deposit in the bank on time deposit, and told him if he did that it would be safer on open account. On the morning of December 24th Pilcher's son told him that the bank was in bad shape, and on the same day Pilcher went to the bank and surrendered his interest-bearing certificate, and received in lieu thereof a deposit slip showing him to be an ordinary depositor to the amount of $6,000. The Court of Civil Appeals found that at the time Pilcher surrendered his interest-bearing certificate of deposit to the bank the bank had in actual cash in its vault at its place of business in Collinsville $387.97 and its cash items convertible into cash sufficient to make the cash and cash items $587.97, and had in the vaults of other banks at the said time cash to its credit due by said banks, $7,229.68, and the further findings of the Court of Civil Appeals show that the bank was hopelessly insolvent on that date, and that the officers of the bank contemplated insolvency, and that Pilcher did not know of the actual condition of the bank further than the information that had been conveyed to him by his son. December 25th was Sunday, and December 26th was observed by the bank as a holiday, and on December 27th, after the bank had been open for business for about two hours, it was closed and taken charge of by the state banking commissioner.

The state banking board, as to the deposit mentioned, denied Pilcher the right to participate in the state guaranty fund, and this suit was brought to determine the correctness of such action on the part of said board. The judgment of the trial court was in favor of the depositor, which judgment was affirmed by the Court of Civil Appeals at Dallas. 256 S. W. 996. The issues before this court are, first, as to the correctness of the action of the trial court in refusing to sustain defendant's general demurrer because the petition failed to affirmatively show that the claim of plaintiff was presented within 90 days, as provided in article 463 of the Revised Civil Statutes, and that the action upon the claim was brought within 6 months after service of notice, as provided in article 464 of the Revised Civil Statutes; second,

⚊For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

whether the action of the officers of the bank in taking up plaintiff's interest-bearing deposit certificate and acknowledging him as a general depositor under the circumstances herein set out was a fraud upon the depositor's guaranty fund, and therefore void.

[1] The Supreme Court, in refusing a writ of error in Chapman v. Tyler County (Tex. Civ. App.) 259 S. W. 301, held that statutes like said articles 463 and 464 are statutes of limitation, and must be affirmatively plead by the defendant in order to constitute a defense, and therefore, of course, the petition of plaintiff was good as against a general demurrer.

[2] In discussing the second issue, we will first have to determine whether the plaintiff, Pilcher, was entitled under the facts of this case to participate in the depositor's guaranty fund regardless of whether he did or did not change his deposit from that of an interest-bearing deposit to a general deposit, subject to his order. The Court of Civil Appeals at Dallas recently held in the case of Farmers' State Bank of Mineola et al. v. Mincher (Tex. Civ. App.) 267 S. W. 996, that, where a depositor has a time deposit certificate providing that his deposit shall draw interest if left in the bank for a specified time, and the bank fails before the expiration of such time, the depositor is entitled to participate in the guaranty fund. We cannot agree with this holding, for it is our construction of article 486, Revised Civil Statutes, that such owner of an interest-bearing deposit shall not participate in the guaranty fund. In Lankford v. Schroeder, 47 Okl. 279, 147 P. 1049, L. R. A. 1915F, 623, where the issue was as to whether the depositor was protected by the guaranty fund, the court in that case defined a depositor as follows:

"A depositor who is protected from loss by a failing bank is one who takes his money or its equivalent and places it, or causes it to be placed, in the bank to his credit subject to his right to check it out or withdraw it from the bank at will."

This case was quoted with approval by the Supreme Court in Kidder v. Hall, 113 Tex. 49, 251 S. W. 497, and by the Beaumont Court of Civil Appeals in Tyler County State Bank v. Rhodes, 256 S. W. 947, and quoted with approval by the same court in Chapman v. Tyler County, 259 S. W. 301, in which case writ of error was denied by the Supreme Court.

We think that it was the intention of the Legislature that the owner of an interest-bearing deposit should not be entitled to the protection of the depositors' guaranty fund is further made manifest by the recitations in article 512, relative to the certificate to be issued by the banking commissioner to a member of the guaranty fund wherein it is provided that said certificate shall contain the following: "The noninterest-bearing and unsecured deposits of this bank are protected by the state bank guaranty fund," and article 515, wherein it is provided that the members of the said guaranty fund may advertise as follows: "The noninterest-bearing and unsecured deposits of this bank are protected by the depositors' guaranty fund of the state of Texas."

A study of the guaranty fund act as a whole has convinced us that it was the intention of the Legislature in passing said act that, where the owner of a deposit has in any way contracted with the bank that his deposit may draw interest, when the bank fails with the contract as to interest still in force, the owner of the deposit is not entitled to participate in the depositors' guaranty fund. This opinion will not be considered as affecting the Mincher Case, as to the rights of plaintiff in attempting to surrender the interest-bearing certificate several months before the bank failed.

[3] This brings us to the controlling issue in the case, that is, as to whether the acts of the officers of the bank and the depositor under the facts in the instant case in attempting to change the deposit of plaintiff from an interest-bearing deposit to a general deposit was, under the circumstances, a fraud upon the state guaranty fund. In the case of Kidder v. Hall, 113 Tex. 49, 251 S. W. 497, Chief Justice Cureton, speaking for the Supreme Court, made this observation:

"The law will look through all semblances and forms to ascertain the actual fact as to whether or not there has been a bona fide deposit made, and, if not, the guaranty fund does not protect the transaction, no matter how it may be evidenced. The guaranty fund does not guarantee the integrity of the evidences of a deposit, such as a certificate, but only the deposit itself."

In Hill, County Treasurer, v. Kavanaugh, 118 Ark. 134, 176 S. W. 336, 4 A. L. R. 1, where an attempt was made by the depositor and the bank officers to change the deposit from that of an individual deposit of the treasurer to a deposit by him in his official capacity that the deposit might have additional protection, and this at a time just before the bank was closed on account of insolvency, the Supreme Court of Arkansas, in discussing this question, used this language:

"The deposit stood as an individual one until the bank became insolvent, and appellant then, for the sole purpose of imposing liability on the stockholders, entered into the agreement with the cashier for the change of the nature of the deposit. It was too late for him to do that after having accepted the benefits of the deposit as an individual one, and it would not be in accordance with the principles of natural justice to permit him to shift the deposit at that time so as to impose a liability on the stockholders."

The attempt of the officers of the bank at the request of Pilcher to change the deposit from interest-bearing to noninterest-bearing with the funds of the bank in the condition that they were, and when the bank officers contemplated insolvency, was an attempt to give Pilcher the benefit of the guaranty fund at a time when, under the law, the bank, under the provisions of article 554, could not receive deposits, and when it was without funds on hand with which to pay off and take up the time deposit certificate. The financial condition of the bank on December 24th, taken in connection with the contemplated insolvency, under the provisions of article 551, Revised Civil Statutes, made the relation of Pilcher toward the bank as a creditor the same as though the bank had been taken in charge by the banking commissioner. At the time when Pilcher and the officers of the bank attempted to change the character of the deposit, the insolvency and contemplated insolvency had already fixed the status of the creditors of the bank as to which funds they could look to for payment, and the status of the holder of an interest-bearing time deposit certificate was such, under the provisions of article 486, Revised Civil Statutes, that he could not participate in the guaranty fund, and any attempt at that time to change the relation of the creditor toward the guaranty fund came too late, and must be treated as a fraud on that fund and therefore void.

We recommend that the judgments of the district court and the Court of Civil Appeals be reversed, and that judgment be here rendered for the plaintiff in error.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both reversed, and judgment rendered for the plaintiff in error.

On Motion for Rehearing.

We inadvertently stated in our original opinion that on December 23, 1921, the cashier of the bank went to Pilcher's son about the account, and asked him if his father did not have some money on deposit in the bank on time deposit, and told him, if he did, that it would be safer on open account. From this statement it would be taken that the cashier mentioned was the cashier of the bank in which Pilcher had left his money, but our attention has been called to the fact on motion for rehearing that the cashier that had the conversation with Pilcher's son was the cashier of another state bank in the same town. The record does not disclose that the son told his father from whom he got the information; therefore the fact that the information was gotten by the son from the cashier of the different bank could not affect our holding in the original opinion; but we think that this statement should be made, so that the record will not show any bad faith on the part of the officers of the insolvent bank. We recommend that the motion for rehearing be overruled.