**SOUTHERN SURETY CO. v. PEDEN et al.**
**(No. 283–3529.)**

(Commission of Appeals of Texas, Section A. Feb. 1, 1922.)

1. **Guardian and ward** ⊚⟳72 — **Succeeding guardian must account for estate in predecessor's hands except that not recoverable by due diligence.**

When a new guardian succeeds a former guardian, he is required to account for all the estate which came into the hands of his predecessor, except such as he may be unable to recover after the use of due diligence, in view of Rev. St. art. 4204.

2. **Guardian and ward** ⊚⟳177 — **Payment by bank of funds to succeeding guardian held to release preceding guardian and surety.**

Where a guardian of a minor was succeeded by another guardian, payment by a bank wherein the funds of the preceding guardian had been deposited, to the succeeding guardian on his demand, operates to discharge the preceding guardian and his surety from liability, even though the payment is made without their knowledge or consent.

3. **Guardian and ward** ⊚⟳177—**Potential possession of funds by succeeding guardian held to release preceding guardian and surety.**

Where a guardian was removed and another appointed, and the bank wherein the funds were deposited, in response to the demand of the succeeding guardian, repudiated any control over the funds by the preceding guardian and placed them to the credit of the succeeding guardian, subject to his check, and he allowed them to remain in the bank, the preceding guardian and his surety were discharged from further liability therefor.

---

⊚⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Guardian and ward ⬀182(7) — Whether succeeding guardian obtained control of funds held for jury.**

' Where the guardian of a minor had been removed and another guardian appointed, and the succeeding guardian brought suit on the bond of the preceding guardian to recover the funds of the minor, the bank wherein they had been deposited having failed, conflicting evidence as to whether the succeeding guardian had obtained actual control and potential possession of the funds in the bank before its failure *held* to require a submission of the question to the jury.

**5. Guardian and ward ⬀182(1)—Succeeding guardian's failure to compel preceding guardian to turn over funds held no defense in action for recovery thereof.**

Where the guardian of a minor was removed and another substituted, and such succeeding guardian sued the previous guardian and his surety for the recovery of funds which had been deposited in a bank subsequently failing, neither the defendant nor his surety could defend on the ground that the succeeding guardian negligently failed to compel him to comply with an order requiring the funds in bank to be turned over, in view of Rev. St. art. 4201.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by R. F. Peden, guardian of the estate of Tina Ellison, a minor, against P. O'Brien and the Southern Surety Company. A judgment for plaintiff was on the appeal of the surety company affirmed by the Court of Civil Appeals (223 S. W. 1114), and the surety company brings error. Reversed and remanded for a new trial, as recommended by the Commission of Appeals.

Capps, Cantey, Hanger & Short and Phillips & Trammell, all of Fort Worth, for plaintiff in error. •

W. Storer, of Wichita Falls, and McLean, Scott & McLean, F. M. Bransford, and C. R. Kinchen, all of Fort Worth, for defendants in error.

· GALLAGHER, J. P. O'Brien was appointed by the county court of Tarrant county guardian of the estate of Tina Ellison, minor. He filed a bond as such guardian in the sum of $2,800 on June 5, 1913. The Southwestern Surety Insurance Company, afterwards merged into the Southern Surety Company, was surety on that bond. On the same day O'Brien deposited to his credit as guardian of Tina Ellison about $1,000 in the Waggoner Bank & Trust Company, which was afterwards consolidated with and continued under the name of Fort Worth Savings Bank & Trust Company. This deposit constituted the entire estate of the ward. O'Brien agreed with his surety that said money should not be drawn out of the bank except upon the signatures of an agent of the surety company and himself. Checks drawn by O'Brien on this account were so signed. The deposit was to remain in said bank for four or five years, and to bear 5 per cent. interest per annum, if it remained the stipulated time, and 4 per cent. interest per annum if sooner withdrawn.

On December 15, 1913, on application of the ward, who had shortly theretofore attained the age of 14 years, R. F. Peden was appointed guardian by the county court. The order of appointment recited that O'Brien was discharged and Peden appointed in his stead, and directed O'Brien to file a final account and turn all the estate in his possession over to Peden. Peden qualified as guardian the same day.

Peden testified on the trial that within a few days after his appointment he saw O'Brien and tried to get him to file a report and turn over the money, but that he refused to do so and shortly thereafter left the state and went to Oklahoma. He further testified that he called on the bank and exhibited letters of guardianship and demanded possession of the funds, and that it declined to turn them over to him. Peden, as guardian, on October 9, 1914, drew a check on this fund for $8.70, and it was paid by the bank. He explained this circumstance by saying that a collector from the county court brought in a bill for costs in said estate and that he gave the collector a check for the amount and told him the funds were in the bank and that he had been told that O'Brien would contest the delivery of the funds by the bank to him; but, inasmuch as said check was for costs, they might pay it.

· Peden further testified that he consulted with the county judge with reference to securing possession of these funds and that the judge told him that as soon as O'Brien returned to the state he would attach him and compel him by imprisonment, if necessary, to turn them over.

The surety company called as a witness one Alexander, cashier of said Fort Worth Savings Bank & Trust Company. He testified that Peden came to him and stated that he had been appointed guardian and asked that the account of the ward be transferred to him so that he could have charge of it. Witness told him that he would have to have some legal evidence of his appointment as guardian. Thereafter Peden returned and brought a certified copy of his order of appointment as guardian of Tina Ellison, and he then changed the account on the books and put it in Peden's name. This change was made by scratching out the name of O'Brien and inserting the name of Peden on the account in the records of the bank. Witness considered such change as complete

as if O'Brien had given a check transferring the funds. Witness stated that after this change O'Brien's check on this fund would not have been honored and that the funds were subject to Peden's check. He further testified that the funds could have been withdrawn at any time, the only penalty being the forfeiture of interest. So far as witness knew the bank was solvent at the time this change was made. Witness left the bank on the 1st day of February, 1915, and the bank failed during the latter part of July the same year.

On the 16th day of June, 1914, O'Brien filed an annual account showing a balance of $900 on deposit and claiming that interest amounting to $46.12 was due by the bank. The record does not show that anything has been, or will probably be, received from the insolvent bank. O'Brien always claimed that the appointment of Peden as guardian was illegal. He was made a party to this suit and answered herein asserting the same claim, but he was not called as a witness.

This suit was instituted on the 19th day of November, 1917, by Peden as guardian of Tina Ellison against O'Brien and his said surety to recover the funds lost by the failure of the bank.

The trial was before a jury, and the court instructed a verdict in favor of Peden as guardian against O'Brien as principal, and the Southern Surety Company as surety for $946.12, the amount shown to be due by O'Brien's annual report, with interest from the date of said report at the rate of 10 per cent. per annum. The jury returned a verdict in response to such charge and the court entered judgment thereon. From this judgment the Southern Surety Company perfected an appeal. The Court of Civil Appeals affirmed the judgment. 223 S. W. 1114. The case is before us on writ of error granted by the Supreme Court on application of the Southern Surety Company.

Plaintiff in error complains of the action of the trial court in instructing a verdict against it and contends that the evidence above-recited raised an issue whether Peden actually secured such control over the funds deposited in the bank as would have enabled him to withdraw them therefrom, had he seen fit to do so, and as would make him responsible for their loss because he did not withdraw them.

[1] When a new guardian succeeds a former guardian, he is required by law to account for all the estate which came into the hands of his predecessor except such as he may be unable to recover after the use of due diligence. R. S. art. 4204. Peden was in the exercise of his legal duty as guardian when he demanded possession of the funds from O'Brien. Having failed to secure such possession from O'Brien, due diligence required him to take some other reasonably effective means to secure possession. This he did by demanding possession of such funds from the bank and by supporting his demand with a certified copy of his appointment.

[2] If the bank had actually paid the funds to Peden on such demand, it would have operated to discharge O'Brien and his surety from liability even though such payments were made without their knowledge or consent.

Plaintiff in error contends that there are facts in evidence tending to show that the bank surrendered to Peden the control and custody of such funds and that such surrender of control and custody was equivalent to actual payment of the funds to Peden. Based on this contention, plaintiff in error requested the court to charge the jury in event they should find that Peden shortly after he was appointed guardian, obtained custody and control of the funds belonging to the estate of the minor, to find for the defendants. The refusal of this requested charge is also submitted as error.

[3] If the bank, in response to Peden's demand, repudiated any claim to, or control over, such funds by O'Brien and placed them to Peden's credit on its books and held them subject to his check and he knew, or ought to have known that such was the case, and voluntarily let them remain in that bank, such facts would have constituted actual control and potential possession of such funds by him. In such event, O'Brien and his surety should be held discharged from further liability therefor. Meridian National Bank v. Hauser, 145 Ind. 496, 42 N. E. 753, 755; Wickenheiser v. Colonial Bank, 168 App. Div. 329, 153 N. Y. Supp. 1035, 1038, 1039; Hill v. Kavanaugh, 118 Ark. 134, 176 S. W. 336, 4 A. L. R. 1.

[4] The evidence, while conflicting, was sufficient to require the court to submit this theory of the case to the jury under appropriate instructions. It follows that the giving of a peremptory charge was error for which the judgment must be reversed.

Plaintiff in error contended that even if Peden did not secure such control and custody of the funds in the bank as to charge him with responsibility therefor as assets of the estate of the minor in his hands, it was nevertheless discharged from liability if Peden failed to exercise due diligence to secure possession of such funds. Based on this contention, it requested the trial court to charge the jury that if they should find that Peden, after his appointment as guardian of Tina Ellison, did not exercise due diligence in securing possession of the funds belonging to her estate, to return a verdict in its favor. The refusal of the court to so charge is submitted as error.

[5] While the statute imposed upon Peden

the duty to use due diligence to secure possession of the funds in question, such duty was imposed for the benefit of the ward and not for the benefit of the former guardian, who wrongfully refused to turn such funds over to his successor in the trust. The court, in the order removing him and appointing Peden in his stead, directed him to turn over to Peden all the assets of the ward in his possession. He was in default in failing and refusing to do so. R. S. art. 4201. Neither he nor his surety can defend on the ground that Peden negligently failed to compel him to comply with such order, or negligently failed to secure control and possession of such funds by other means, and the court properly refused to so charge.

We recommend that the judgments of the district court and the Court of Civil Appeals be reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.