[No. 3496.   Dec. 13, 1930.]

FIDELITY & DEPOSIT CO. OF MARYLAND v. WEIL et al.

[294 Pac. 329.]

E. R. Wright, of Santa Fe, and L. C. Ilfeld, of Las Vegas, for appellants.

Roberts & Brice, of Santa Fe, for appellee.

OPINION OF THE COURT.

BICKLEY, C. J.

Clara Weil, H. S. Bowman, and Paul A. F. Walter have been, successively, guardian of a minor's estate. Nathan Weil and L. C. Ilfeld are Mrs. Weil's sureties, and Fidelity and Deposit Company of Maryland is Bowman's· surety. There having been a loss to the estate, Walter sued Mrs. Weil's sureties and Bowman and his sureties. By agreement of the parties the liability was fixed at $6,000. By further agreement Mrs. Weil's sureties paid one-half of this sum and Bowman's surety the other half, leaving it to future litigation to determine the question of legal liability.

The present suit was commenced by the Fidelity & Deposit Company against Weil and Ilfeld for exoneration. It was met by a cross-suit claiming the same relief. Neither party entertains a theory of joint liability, the question being which should save the other harmless by repaying the $3,000 contributed under the circumstances stated.

The facts are not in dispute. Mrs. Weil, without authority of court, sold $8,000 of Liberty bonds of the estate and placed the money on time certificate with the peoples' Bank & Trust Company without security. The matter was in that condition when she died May 1, 1925. June 2nd following, Bowman was appointed. He soon came into possession of the certificate mentioned, which became due June 15, 1925. He made a demand upon the bank for payment of the certificate, as well as of a checking account of some $600. The bank informed him that it was in financial straits, and that insistence on the demand would force it to close. Thereupon Bowman accepted payment of $200 accrued interest, and the two new certificates of $4,000 each, payable in six months to him as guardian. He also accepted transfer of the checking account and placed the $200 in it. A day or two later he surrendered one of these certificates for a new one of $1,500 and a

checking account credit of $2,500 with certain restrictions on withdrawals from the checking account. On August 19th following, the bank closed, resulting in loss to the checking account balance and the certificates. In these transactions Bowman did not consult or notify the defendants and cross-plaintiffs and they had no knowledge of them until after the closing of the bank.

The learned trial judge found and concluded that the proximate and sole cause of the loss was Mrs. Weil's unauthorized conversion of the Liberty bonds into bank credits; that Bowman had acted diligently and prudently, and without bad faith and negligence; that the bank was insolvent when Mrs. Weil last renewed the certificate; that when Bowman became guardian and made his demand and accepted new certificate, the bank was in no better financial condition than when it closed its doors, with assets sufficient only to pay from 15 per cent. to 25 per cent. of its deposits; and that, if he had insisted upon his demand for payment, the bank would have been forced to close its doors at the time. Judgment was for the plaintiff, and the defendants and cross-plaintiffs have appealed.

Appellant's contention of error is based upon a single main proposition. It is that Bowman, by accepting a book transfer of the checking account, by renewing the time deposit and then converting part of the latter into checking account, all on his own responsibility, and without consulting them or making demand upon them, released their liability as sureties.

As a preliminary to this they argue that the transfers and renewals amount in law to a withdrawal of the cash and the loaning of the money to the bank. They cite authorities that such is the legal effect of these transactions. We do not question those decisions nor the principle that in some circumstances the law will consider such transactions in their theoretical elements rather than in their practical entirety. But in this case such view is precluded by the stated facts. The bank being insolvent, we cannot indulge the presumption that the money was in its vaults. Bowman having tried and failed to withdraw the money, we cannot consider that he did withdraw it.

We need not question that conduct of Bowman resulting in loss of the funds and prejudicing appellants as sureties would have released them pro tanto. But here no such loss is alleged or shown. As the facts appear, if Bowman had put the responsibility upon appellants and they had made the demand, the results would have been the same. Their insistence upon it would have closed the bank. They could have withdrawn no more than Bowman did, and could have made no better terms. The extension of time did not prejudice them. They had the same rights after the bank closed as they would have had if no extension had been made.

The only question then is whether appellants were released as matter of law. They seem to invoke the rule that an extension of time to the principal, without consent of the surety, will discharge the latter, prejudice being presumed. But this is not an ordinary case of that kind. Appellants were not the bank's sureties. There was no extension of time to their principal. Such an application of the rule is not familiar to us, and we look to appellants to sustain it.

Sole reliance is placed upon Southern Surety Company v. Peden (Tex. Com. App.) 236 S. W. 975. In that case there was no contention that the deposit by the original guardian was illegal or negligent. His liability and that of his surety existed, if at all, because of a refusal to turn over the deposit to his successor in trust. The court held that, if the successor, notwithstanding this refusal, procured a transfer of the deposit on the bank's books, and had his control of it recognized, and then voluntarily continued it, it amounted to payment in cash and discharged the former guardian and his surety from further liability. Manifestly this case affords no support for the proposition here under consideration. Indeed it is harmful to appellants' cause if we are to understand them to contend that Bowman owed them any duty with respect to obtaining possession of its assets. The court held that this duty was owing to the ward; not to the former guardian or her sureties.

Appellants being represented by able counsel, we have not felt called upon to undertake research for authorities

not brought to our attention. Yet we may mention Kunz v. Ragsdale (Tex. Civ. App.) 200 S. W. 269, 271, cited by appellee, which, in its facts, is more like the case at bar. It was there said:

"We are not prepared to say that such negligence under the facts of this case, or under any facts, would release the sureties of her husband (predecessor as guardian) from liability to the wards, but suppose that it would do so, provided the negligence resulted in the loss of the loans and deposits, which might be the case if Toman was solvent and the money could have been collected after she became guardian."

As already pointed out, the facts here absolve Bowman from any such negligence.

Finding no merit in appellants' contentions, the judgment will be affirmed, and the cause remanded.

It is so ordered.

WATSON and SIMMS, JJ., concur.

PARKER and CATRON, JJ., did not participate.