**FARMERS' STATE BANK OF MINEOLA et al. v. MINCHER. (No. 9157.)** *

(Court of Civil Appeals of Texas. Dallas. Nov. 15, 1924. Rehearing Denied Jan. 3, 1925.)

**I. Appeal and error ⬥⟹595—Filing of one transcript only is necessary to confer jurisdiction to review judgment against two appellants.**

To confer jurisdiction on appellate court to review judgment against banking commissioner, and against insolvent bank in course of liquidation, it is only necessary that one transcript be filed.

**2. Appeal and error ⬥⟹595—Transcript filed by codefendant bank on appeal held insufficient to confer jurisdiction of banking commissioner also appealing.**

Where banking commissioner on entry of judgment against him in his official capacity gave notice of appeal, and thereby, under Rev. St. art. 2085, perfected his appeal, but failed to file transcript within 90 days thereafter as required by Rev. St. art. 1608, held transcript thereafter filed by his codefendant bank though within 90 days after it had perfected its appeal, was insufficient to give appellate court jurisdiction of commissioner.

**3. Banks and banking ⬥⟹15—Petition in action to establish deposit as guaranteed claim held not demurrable.**

Petition in action against insolvent bank and banking commissioner to establish claim as deposit, secured by depositors' guaranty fund, alleging commissioner's refusal to so classify claim, that such refusal was within 90 days of publication of notice to file claims required by Rev. St. art. 465, and that suit was brought within six months after such refusal, held not demurrable as failing to show presentation and suit within time required.

**4. Banks and banking ⬥⟹15—Petition in action to establish deposit as guaranteed claim held subject to special exception.**

Petition in action against insolvent bank and banking commissioner, to establish deposit as claim secured by depositors' guaranty fund, held subject to special exception, in that it did not specifically allege character and date of notice given under Rev. St. art. 465, and of commissioner's refusal to so classify claim.

**5. Banks and banking ⬥⟹15—Compliance with requirements as to filing of claim and time for bringing suit need not be affirmatively alleged in action on rejected claim.**

Failure to comply with Rev. St. arts. 463–465, requiring holders of preferred claims against insolvent banks to present them within 90 days after first notice is given, or to sue within six months after rejection, are matters of defense, and compliance need not be affirmatively alleged in action on rejected claim.

**6. Pleading ⬥⟹228—Failure to allege filing of claim and suit thereon within required time, if necessary, must be brought to the court's attention by special exception.**

Under district and county court rule No. 17, failure of one suing banking commissioner and insolvent bank on rejected claim to allege compliance with requirements of Rev. St. arts. 463–465, relating to time for filing of claim and for suit, if necessary, are matters which must be brought to court's attention by special exception.

**7. Banks and banking ⬥⟹15—Deposit to bear interest only if left 12 months, which was not so left, held a "noninterest-bearing deposit;" "indirectly;" "contingent;" "condition;" "if."**

Depositors' guaranty law (Vernon's Sayles' Ann. Civ. St. 1914, art. 486), providing "that deposits upon which interest is being paid or contracted to be paid, directly or indirectly * * * shall not be insured, * * *" held not to exclude a deposit which was to bear interest if left 12 months, but which depositor unsuccessfully attempted to withdraw before that time, and which had been in bank less than 12 months when it failed, "indirectly" signifying doing by obscure or circuitous means that which is prohibited from being done directly, a thing not done in direct or open manner, including all modes of doing prohibited act other than by direct method; "contingent" presaging the existence of a tentative liability which will become absolute on happening of certain event, and comprehending a liability depending on some uncertain future event, while "condition"

---

denotes a future and uncertain event on the happening of which is made to depend the existence of an obligation, or which subordinates the existence of liability on contract to a future and uncertain event, and "if" being always expressive of a condition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Condition; Contingent; If; Indirect—Indirectly.]

**8. Evidence ⏦20(2)—Court must take judicial knowledge that affected institutions have protected their depositors as required by banking depositors' guaranty law.**

It being mandatory under depositors' guaranty law (Vernon's Sayles' Ann. Civ. St. 1914, arts. 445–447) that affected institutions adopt one of methods provided for securing their depositors, courts must take judicial knowledge that the named corporations have so protected their depositors.

**9. Banks and banking ⏦15—Claimant of guaranteed deposit under bank depositors' guaranty law is only required to show method of protection adopted by defendant bank. .**

Depositor suing banking commissioner and insolvent bank to establish deposit as claim secured by depositors' guaranty fund in view of bank depositors' guaranty law (Vernon's Sayles' Ann. Civ. St. 1914, arts. 445–447), is only required to show by proper evidence the system adopted by defendant bank; adoption of one of the required systems being presumed.

**10. Banks and banking ⏦15—Letterhead and newspaper notice held admissible to show bank had protected depositors by depositors' guaranty fund.**

Letterhead containing words, "guaranty fund bank," and newspaper clipping bearing notice relative to filing claims on guaranteed deposits, *held* admissible to show that defendant bank had protected its depositors by the depositors' guaranty fund, in action to establish claim as guaranty deposit, in view of bank depositors' guaranty law (Vernon's Sayles' Ann. Civ. St. 1914, arts. 463, 515).

**11. Banks and banking ⏦15—Bank president's testimony that it was guaranty fund bank held admissible in depositor's action to establish status of deposit.**

In depositor's action to establish claim as deposit secured by depositors' guaranty fund, testimony by president of defendant bank that it was a guaranty fund bank, *held* admissible as within his knowledge, independent of certificate issued under article 512, Vernon's Sayles' Ann. Civ. St. 1914, by commissioner of banking reciting such fact.

**12. Banks and banking ⏦15—Letter held admissible to show due presentation and rejection of claim.**

Letter, written by liquidating agent of insolvent bank to attorneys for claimant of deposit alleged to be secured by depositors' guaranty fund, *held* admissible to show that claim had been duly presented to and denied by department of banking.

**13. Banks and banking ⏦4—Bank depositors' guaranty law entitled to liberal construction.**

Bank depositors' guaranty law (Vernon's Sayles' Ann. Civ. St. 1914. arts. 445–517) should be liberally construed to accomplish the purposes intended, particularly in view of section 3, Final Title Revised Civil Statutes, specifically requiring such construction.

Appeal from District Court, Wood County; J. R. Warren, Judge.

Action by Mrs. M. A. Mincher against the Farmers' State Bank of Mineola and J. L. Chapman, Commissioner of Banking. Judgment for plaintiff, and defendants appeal. Affirmed.

Bozeman & Cathey, of Quitman, and E. A. Tharp, of Mineola, for appellants.

Bumpass & Wade, of Terrell, for appellee.

VAUGHAN, J. This suit was instituted on the 16th day of March, 1923, by appellee against the Farmers' State Bank of Mineola, Tex., and J. L. Chapman, commissioner of banking of the state of Texas, to establish as a general deposit secured by and payable out of the depositors' guaranty fund a claim against said bank for $2,000. Appellee, plaintiff in the court below, alleged substantially that the Farmers' State Bank of Mineola is a banking institution duly incorporated and organized under the banking laws of Texas, with its domicile and place of business at Mineola, Wood county, Tex., and operating under the depositors' guaranty fund plan, and that the same was in process of liquidation by the commissioner of banking, J. L. Chapman. That appellee was a depositor of said bank, and had on deposit therein at the time same was closed by the commissioner, on January 8, 1923, the sum of $2,000, which was entitled to be paid to her out of and from the depositors' guaranty fund, the bank being a guaranty fund bank, and that it was the duty of said commissioner of banking to so classify said deposit for payment, which had been refused though claim had been made; that said deposit was at the time of the closing of said bank, and at the time of filing suit, subject to all the benefits guaranteed noninterest-bearing and unsecured depositors under and by virtue of guaranty fund law of the state of Texas. That on February 11, 1922, said bank issued to appellee a certificate of deposit for the $2,000 sued for, as follows:

"The Farmers' State Bank, Mineola, Texas, 2/11/1922. No. 61. $2,000.00. Mrs. M. A. Mincher has deposited in this bank the sum of $2,000 and 00 cents payable to the order of herself in current funds on return of this certificate properly indorsed. Interest 4% per annum if left twelve months; interest to cease one year from date. [Signed] R. D. Daniel, Cashier."

That same was a demand certificate and, by its terms, interest was only to be paid in

⏦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the event the deposit remained in the bank for 12 months from its date. That said deposit did not remain in the bank for 12 months; said bank having been closed by the banking commissioner on January 8, 1923. And, further, that on or about July 21, 1922, and again about October 1, 1922, appellee demanded of said bank the payment of said sum of $2,000 represented by said deposit, and offered to waive any question of interest thereon, but that said bank refused to comply with said demand and pay to her said sum of $2,000. That thereafter said deposit remained in said bank as an unsecured and noninterest-bearing deposit, and was such at the time said bank was closed, at which time no interest was due thereon, and none had been contracted to be paid within the meaning of article 486 of the Revised Statutes of Texas, concerning deposits not guaranteed by the guaranty fund law. That the provision of said article with reference to deposits upon which interest had been contracted to be paid refers to deposits which the bank holds; such bank having legally bound itself to pay interest thereon, either directly or indirectly, and not to deposits on which the bank had conditionally agreed to pay interest. And, since the condition upon which interest in any event had been agreed to be paid was never performed, such deposit was not a deposit upon which interest had been contracted to be paid within the meaning of said statute and was, and is, subject to all the benefits of the guaranty fund law of the state of Texas. Appellee prayed for judgment that said deposit be classified as a noninterest-bearing, unsecured deposit, protected and secured by the guaranty fund law of said state, etc.

Appellants each answered by general demurrer, general denial, and a special denial that appellee was a general depositor in said bank, and each specially answered that the claim sued on by appellee was an interest time deposit as the result of the contract entered into between appellee and said bank, by which said money was to remain in said bank for a period of 12 months, and for which it agreed to pay appellee 4 per cent. interest per annum, and for which it issued to appellee the time certificate sued on, and that the same had not matured at the time said bank was closed on January 8, 1923; that said deposit was at all times an interest-bearing deposit, and was so understood and recognized by appellee, and was not protected by the guaranty fund.

At the threshold of this case we are called to pass upon appellee's motion to affirm on certificate the judgment of the court below as against appellant Bank Commissioner Chapman, because it appears that the transcript was not filed with the clerk of this court within 90 days after the appeal was perfected by and as to said appellant commissioner of banking.

Trial was had before the court on May 31, 1923, without the intervention of a jury, which resulted in appellee's claim to the extent of $2,000 being established against said bank and said commissioner of banking as an unsecured and noninterest-bearing deposit to the credit of appellee in said bank at the time it was closed, and entitled to payment in full out of the bank guaranty fund, from which judgment appellants respectively appealed.

Appellant Chapman, in his official capacity as commissioner of banking of the state of Texas, then and there gave notice of appeal to this court. Under the provisions of article 2085, Revised Statutes of Texas, the commissioner of banking was not required in his official capacity to execute bond in order to perfect his appeal, as same was perfected by giving the above notice, and he was required under article 1608, Revised Civil Statutes of Texas, to file his transcript with the clerk of the Court of Civil Appeals within the 90 days from the performance of his appeal, to wit, May 31, 1923. The transcript was filed in this court on the 4th day of September, A. D. 1923, which was the ninety-sixth day after his appeal had been perfected.

This motion is resisted on two grounds: (1) That, as both defendants were appealing, the filing of the transcript embracing all the proceedings within 90 days from the performance of the appeal by the Farmers' State Bank brought the case to this court for review, and gave it jurisdiction of the entire case as to both appellants, the filing of one transcript being sufficient for that purpose; (2) that neither said Chapman nor his attorneys were guilty of any negligence in applying for or doing the things requisite to applying for, receiving and filing with the clerk of the Court of Civil Appeals said transcript, but all acted with due diligence in that respect.

[1] The transcript was filed within 90 days from the approval of the appeal bond seasonably filed by the Farmers' State Bank. Therefore, as to said bank, the transcript was properly filed. It is true that, for the purpose of conferring jurisdiction on this court to pass upon the case as to each of the appellants, it was only necessary for one transcript to be filed. However, the filing of said transcript, in order to have conferred jurisdiction on this court of the appeal performed by appellant commissioner of banking, should have been within 90 days from that date, as he had no interest in his official capacity, and could not be in such capacity affected by the result of the appeal prosecuted by appellant bank, and said bank had no interest in the result of the appeal prosecuted by said Chapman in his official capacity. The rights of the parties, in so far as the cause of action against appellants as defendants in the court below is concerned, were separate and distinct, save and except it was necessary to es-

tablish an indebtedness in the form of a deposit due appellee as plaintiff therein against appellant bank in order to maintain the suit against appellant Chapman in his official capacity to secure the benefit of the depositors' guaranty fund so represented by appellant Chapman.

[2] Appellants do not controvert the allegation that said bank was indebted to appellee in the sum claimed by her; but by their pleadings admit the amount to be correct. The only controversy between them being that which would inure alone to the benefit of the depositors' guaranty fund, to wit, the character of the deposit, whether a time interest-bearing or a general deposit, unsecured and noninterest bearing. Hence appellant Chapman was required to file transcript with the clerk of the Court of Civil Appeals within 90 days from the date said notice was given and appeal perfected thereby, in order to have conferred jurisdiction on this court as to his appeal. Therefore the filing of the transcript in time to give this court jurisdiction as to appellant bank did not, of itself, confer such jurisdiction as to appellant Commissioner of Banking Chapman. The other ground on which the motion is resisted, we think, is of sufficient merit to justify the overruling of the motion, in that the failure to file the transcript in time was not due to any fault or neglect on the part of appellant Chapman or attorneys representing him. Therefore said motion is overruled on this ground.

The following material facts found by the trial court are adopted and made the findings of fact by this court: Appellant Farmers' State Bank of Mineola, Tex., is a banking institution situated in the town of Mineola, Wood county, Tex., duly incorporated and organized under the laws of Texas, and that appellant J. L. Chapman is commissioner of banking of the state of Texas. On February 2, 1922, appellee deposited in appellant bank the sum of $2,000 under an agreement with said bank that, if she would allow said deposit to remain in said bank for twelve months, the bank would pay her interest at 4 per cent. per annum upon said deposit; that, if said deposit were withdrawn sooner than twelve months, no interest should be paid thereon; that said deposit was unsecured; that, at the time she made said deposit, the bank, through its cashier, issued to her a deposit slip or certificate as hereinbefore set out. On or about July 1, 1922, appellee elected to withdraw said deposit, and called upon the officers of said bank for said money, offering to waive any interest thereon, and the officers of the bank declined to pay same; that again, on or about October 22, 1922, appellee demanded of said bank said deposit of $2,000, offering at the time to waive any claim for interest thereon, and the bank again refused to pay said sum to her,

or any part thereof, the officers of the bank claiming at the time that the deposit was an unconditional deposit for a term of 12 months. On January 8, 1923, said bank was closed by the department of banking of the state of Texas, and since said time has been in the hands of the liquidating agent of said department. After the commissioner of banking had taken charge of the appellant bank, appellee, in due and proper form, made and presented her claim to the commissioner of banking of the state of Texas for allowance by said commissioner as an unsecured, noninterest-bearing deposit in said bank belonging to appellee, which claim was refused and denied by said commissioner of banking.

In addition to the above, the following finding is made by this court: Appellee, by the terms of said contract of deposit, reserved the absolute right to cancel or terminate same at any time prior to the expiration of the 12 months' period fixed by the terms of said certificate of deposit for which appellant bank contracted to pay interest at 4 per cent. per annum, provided said deposit should remain with said bank for said period of time; that said sum of $2,000 was on deposit in said bank to the credit of appellee at the time said bank was taken charge of by the commissioner of banking, and was a claim or demand in her favor against said bank in the sum of $2,000 at said time, and that no part of said sum has been paid.

[3] Appellants contend that the court erred in overruling their general demurrers to appellee's petition, because same does not allege any facts showing that the claim sued upon was presented to the commissioner of banking within 90 days from the first publication of the notice required to be published under Revised Statutes, art. 465, Complete Statutes of 1920, and because said petition does not allege any facts showing that appellee's suit was filed within 6 months after rejection of her claim by the commissioner of banking.

We do not think the petition is subject to the demurrers urged, as should be manifest from the following allegation dealing with the presentment of the claim and the filing of the suit:

"Further, the commissioner of banking of the state of Texas, J. L. Chapman, though claim has been made, has through the general liquidating agent, W. L. Peterson, refused to classify said deposit for payment out of the guaranty fund. By letter dated February 19, 1923, the said general liquidating agent acting on behalf of the said commissioner of banking wrote the attorneys for plaintiff with reference to said deposit as follows: 'Since the deposit was interest bearing, she will not share the benefits of the guaranty fund, but will participate in the assets of the bank pro rata with all other general creditors.' Said refusal to so classify said claim of the plaintiff was within 90 days of the

publishing of the notice of the closing of said bank as provided by law, and this suit is brought within 6 months from the date of said refusal to so classify said claim. And the said deposit should be established as against said bank, and classified by the defendant commissioner of banking as noninterest-bearing and unsecured, and subject to the guaranty fund law."

[4] If a special exception had been urged to the above allegations because same did not contain specific statements as to the character and date of the notice given, as well as the refusal to classify said claim for payment out of the guaranty fund, said exception would have been properly sustained because of the inaccuracy or inefficiency of the allegations in reference to those matters, but not because said allegations, although imperfect in manner and form, do not allege a cause of action.

[5, 6] Futhermore, we are of the opinion that the holding by this court in the case of State Banking Board et al. v. Pilcher, 256 S. W. 996, on similar questions of practice applies to the instant case, to wit, that Revised Statutes, arts. 463–465, providing that holders of preferred claims against insolvent banks must present same within 90 days after the first notice given by the commissioner of insurance and banking, and that suits on rejected claims must be brought within 6 months after rejection, present questions of limitation which are matters of defense and not necessary to be alleged affirmatively in an action on a rejected claim. And, further, assuming that said articles requiring one suing on a rejected claim to allege presentation within 90 days and suit within 6 months after rejection, that failure to so allege must be brought to the attention of the trial court by special exceptions in view of rule 17 for district and county courts. Limitations were not pleaded by appellants on the ground either that the claim was not presented within 90 days, or that suit was not filed within 6 months after rejection of appellee's claim, and no special exceptions were urged to that portion of appellee's petition alleging the presentment of claim to be classified and paid out of the depositors' guaranty fund, and the filing of suit thereon within 6 months after date of rejection. Therefore, the propositions based on the assignments of error anent the ruling of the court on said general demurrers are overruled.

The major proposition presented by appellants' appeal is the contention that appellee's deposit, on which her claim is based, was a time interest-bearing deposit, and therefore not secured by the bank depositors' guaranty fund, as the law only extends the benefits of said fund to unsecured, noninterest-bearing deposits. Article 486, c. 5, the bank depositors' guaranty law (V. S. Ann. C. S. 1914), in part reads as follows:

"The depositors of said bank * * * as specified in article 448, shall be paid in full out of the cash in said bank * * * that can be made immediately available from such bank; and the remainder shall be paid out of the Depositors' Guaranty Fund through the said board, in the event the cash available in said institution shall be insufficient; Provided, that deposits upon which interest is being paid, or contracted to be paid, directly or indirectly by said bank * * * to the depositor, * * * shall not be insured under this chapter."

Was the deposit made by appellee in reference to which this suit was instituted one on which interest was being paid or contracted to be paid, directly or indirectly, within the meaning of this provision of the law? The $2,000 deposit by appellee with appellant bank was under a contract which did not bind her to leave said sum of money with said bank for any specified time; it being only a tentative transaction whereby it was agreed that, if she should permit said sum of money to remain on deposit with said bank for the period of 12 months, then, and in that event only, the bank would pay her interest thereon at the rate of 4 per cent. per annum; the absolute right under the terms of the contract being reserved to appellee to cancel or terminate the contract at any time by the withdrawal of the sum so deposited. Therefore, no liability was ever created on the part of appellant bank to pay appellee any sum as interest for the use of said $2,000 during the time it should remain on deposit, unless it should so remain for a full period of 12 months. That being true, it follows, as a natural sequence, that no legal liability ever existed for the payment of any interest, or could have ever been created, until after the expiration of the full period of 12 months, for, in the intermediate time, the obligation of the promise to pay interest was suspended, in that, until said sum had remained on deposit for a period of 12 months, which would have been the performance of the condition of the promise giving rise to the legal obligation to pay interest, there was no consideration to pay same, and the promise therefore was but a unilateral executory agreement. However, if appellee had permitted said sum to remain on deposit with appellant bank for the full period of 12 months, or if said bank had remained a going concern as a banking institution, and said sum had remained on deposit during that time without appellee's having exercised her absolute right to cancel or terminate the contract, then, perforce of the performance of the condition by appellee, said agreement or contract would have been clothed with a valid consideration which, by such performance, would have related back to the promise evidenced by the certificate of deposit, and it would have then become obligatory. Clark v. Russel, 3 Watts (Pa.) 213, 27 Am. Dec. 348; Morse v. Bellows, 7 N. H. 549, 28 Am. Dec. 372; Atlantic Pebble Co., Ltd., v. Lehigh Valley R. Co., 89 N. J. Law, 336, 98 A. 410, in which the court held:

"Where a promise has for its subject-matter something which by the terms of the agreement is left to depend for its very existence upon the future election of the promisor, it will not form a valid consideration for an executory contract." Nicholls v. Wetmore, 174 Iowa, 132, 156 N. W. 319; Am. Agri. Chem. Co. v. Kennedy & Crawford, 103 Va. 171, 48 S. E. 868; Killebrew v. Murray, 151 Ky. 345, 151 S. W. 662.

[7] We therefore hold that the contract under which said sum of $2,000 was deposited by appellee was but a unilateral executory contract on which no interest had been paid during the period of time same remained on deposit under said certificate of deposit sued upon, and that no interest had been contracted to be paid, directly or indirectly, for the use of said sum, and was therefore a deposit secured by the depositors' guaranty fund. It is contended by appellants that at least there was a contract to pay interest indirectly. To this contention we are unable to assent. The word "indirectly," as used in article 486, supra, has a general, well-defined and accepted legal meaning, which is not to be associated or confused with the term "contingent" or "condition"; for the term "indirectly" signifies the doing, by obscure or circuitous means, that which is prohibited from being done directly, that is, a thing done not in a direct or open manner, i. e., covering all other modes of doing the prohibited act other than by a direct method. Attorney General v. N. Y. H. R. & H. R. Co., 198 Mass. 413, 84 N. E. 737–742; Floyer v. Edwards, 1st Cowp. 112–114, opinion by Lord Mansfield. On the other hand, the term "contingent" presages the existence of a tentative liability which will become absolute on the happening of a certain event. Fernald v. Johnson, 71 Me. 437, 440; Verdier v. Roach, 96 Cal. 467, 31 P. 554, 556. And the term "contingent," used in connection with a claim, comprehends a liability depending upon some future event which may or may not happen, and therefore wholly uncertain whether there will ever be a liability. While the term "condition" denotes a future and uncertain event upon the happening of which is made to depend the existence of an obligation, or which subordinates the existence of liability under a contract to a future and uncertain event. Barber Asphalt Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193.

The contract under which the $2,000 referred to in the certificate of deposit issued by appellant bank was left with said bank on deposit, construed in its strongest light against appellee, is only a conditional or contingent agreement to the effect that, if appellee should permit said sum of $2,000 to remain on deposit for a full period of 12 months, then the bank would pay her interest at the rate of 4 per cent. per annum, and, if she did not do so, the converse is that she would not receive anything by way of interest for the length of time said sum of $2,000 should remain on deposit short of the full period of 12 months. Therefore the $2,000 was not deposited under a contract whereby she was to receive interest directly or indirectly, but, at best, only upon a contingency or a condition. The very language of the certificate of deposit giving the proper legal effect to the word "if" used in the clause having to do with the payment of interest, thereon, to wit, "interest 4 per cent. per annum *if* left 12 months," expresses in unmistakable terms that the right to demand the payment of interest rested upon a condition precedent, viz. that the $2,000 should be permitted to remain with appellant bank for the period of 12 months. The word "if" is always expressive of a condition, and the condition expressed by the use of the word "if" in said certificate of deposit is that interest would be paid at the rate of 4 per cent. on the amount of said deposit on the condition that same should remain with the bank for a period of 12 months. Baum v. Rainbow Mining, Milling & Smelting Co., 42 Or. 453, 71 P. 538, 542; Nelson v. Combs, 18 N. J. Law, 27–36; Marschall v. Eisen Vineyard Co., 7 Misc. Rep. 674, 28 N. Y. S. 62, 63.

The condition thus injected into said contract as to the use of said sum of money for 12 months by the word "if" clearly conferred upon appellee the absolute right to terminate said contract at any time she should so elect, same being by its very terms a demand deposit, so that the very existence of the condition precedent upon which liability for payment of interest entirely depended rested upon the will of appellee, to wit, whether or not she would exercise the absolute right reserved to her to terminate said contract by demanding the return of the money so deposited by her. No corresponding right being reserved to appellant bank, the contract under which said deposit was made is nothing more than a unilateral executory agreement.

Even should it be conceded that the contract under which said $2,000 was deposited was not a unilateral executory contract, but one that obligated appellant bank to pay interest on said sum at the rate of 4 per cent. per annum for the use of said $2,000 for 12 months, and was sufficient consideration to create an enforceable executory contract between the parties, nevertheless, this would not contribute to strenghten appellants' claim that said deposit was, at the time appellant bank was closed by the commissioner of banking, an interest-bearing deposit, and therefore unprotected by the depositors' guaranty fund. For, as the contract did not bind appellee to leave the $2,000 with appellant bank for any particular length of time, or the bank to pay interest thereon for any period of time less than 12 months, the bank could only have become obligated to pay interest in the event it had been permitted to

retain the $2,000 for the full period of 12 months. However, the bank did not retain the $2,000 under and by virtue of the terms of said agreement or certificate of deposit for the period of 12 months, in that (a) acting within her rights, reserved to her by said agreement, appellee terminated same long before the fullness of time thereof; and (b) appellant bank ceased to be a going concern by the enforcement of the provisions of the law controlling its existence before the expiration of the period of time the bank was to retain the money before becoming liable for the payment of interest, after appellee had exercised her right to terminate said contract of deposit by demanding the return to her of the $2,000. Hence the refusal of the bank to comply with the demand of appellee for the payment to her of the $2,000, for the use of which the bank had not become obligated absolutely to pay any sum as interest, or the appellee obligated to permit the bank to have the use of same for any particular length of time, that depending entirely upon the will of appellee, could not make appellee, as to said $2,000, occupy any other position than that of a general depositor, protected by the bank depositors' guaranty fund. Further, it may be said that the bank, never having had the right to compel appellee to permit said sum to remain with it for any length of time, or to lawfully withhold same from her, could not, by its own act, in violation of its contract with appellee, make it the duty of appellee to leave said sum of money for 12 months, or any other length of time, nor to defeat her right to claim the benefit of the bank depositors' guaranty fund to secure her against loss of said $2,000. Am. Agri. Chem. Co. v. Kennedy & Crawford, supra. Appellee actually left with appellant bank $2,000 in cash, subject to her order, by virtue of which the title to the money passed to the bank, notwithstanding the "conditional" agreement to pay interest, as such condition was never fulfilled. Therefore the deposit was not one upon which interest had been contracted to be paid, either directly or indirectly. Kidder v. Hall, 113 Tex. 49, 251 S. W. 497.

It is contended by appellants that appellee failed to establish by legal evidence that appellant bank was a subscriber to or member of the depositors' guaranty fund, and that therefore the judgment appealed from was erroneous, and should be reversed. Articles 445–447 of the bank depositors' guaranty law (V. S. T. C. S. 1914), are mandatory to the extent that certain corporations named in article 445, then or thereafter incorporated, should protect their respective depositors, either by the depositors' guaranty fund, or by the depositors' bond security system provided for by chapter 5, bank depositors' guaranty law (V. S. T. C. S. 1914; Acts 1909 [Second Special Session] p. 406). In this respect article 445, supra, provides (referring to corporations named in said article):

"Shall, at its option, protect its depositors in the manner hereinafter prescribed, either by availing itself of the depositors' guaranty fund herein provided for, or by the depositors' bond security system hereinafter set forth."

And article 447, supra, in part reads as follows:

"Each and every bank and trust company, mentioned in article 445, shall have the right and privilege, at its option, to secure its depositors by the manner, method, and under the terms, provisions and regulations, as set forth in this title for the depositors' guaranty fund or the bond security system; provided, that all such banks and trust companies shall secure their deposits by one of said plans on January 1, 1910."

[8, 9] It is plain that the above provisions of the act made it mandatory that one of the methods provided by said act for securing depositors shall be adopted; the option accorded being only the right to select between the two plans provided by said act. Therefore courts are required to take judicial knowledge of the fact that all corporations named in said article 445 have either protected their depositors by the depositors' guaranty fund or the bond security system provided for by said guaranty law, supra, as all such corporations doing business in this state under certificate issued by the commissioner of banking are presumed to have complied with all the requirements of the law controlling and dealing with the right of such corporation to engage in the banking business. Therefore, appellee was only called upon to establish by proper evidence the system that had been adopted by appellant bank to secure its deposits.

Article 463 of said bank depositors' guaranty law requires the commissioner of banking, in liquidating a bank closed by him, to publish a notice in a newspaper for three consecutive months, in which he is required to state, among other things, in larger type than that in which the body of such notice is printed:

"That all such claims of guaranteed depositors must be presented and legal proof thereof made at the place designated * * * and that all claims of guaranteed depositors presented after expiration of forty five days shall not be entitled to payment of any portion thereof out of the depositors' guaranty fund."

Article 515, Id., authorizes certain advertisements and designations of banks operating under the provision of said act, to publish by any form of advertising which they may adopt, or upon their stationery, the following words:

"The noninterest-bearing and unsecured deposits of this bank are protected by the depositors' guaranty fund of the state of Texas."

Said act further providing:

"But they are hereby prohibited from describing said forms of guaranty or by any other terms or words than herein named."

For the purpose of establishing the fact that appellant bank had protected its depositors by the depositors' guaranty fund of the state of Texas, appellee introduced in evidence a letter of date February 21, 1923, from E. L. Addison, special liquidating agent of the banking department, written on one of the letterheads of appellant bank, on which was printed the words, "Guaranty Fund Bank." Also, a clipping from the Mineola Monitor, a newspaper published at Mineola, bearing a notice published in said paper over the signature of appellant Chapman, commissioner of banking, which contained the following statement:

"All persons having claims against the Farmers' State Bank of Mineola, Tex., must present such claims and make legal proof thereof on or before April 18, 1923. All claims of guaranteed deposits must be presented, and legal proof thereof made no later than April 18, 1923."

The introduction of said letter and copy of notice in evidence was objected to on the ground that same were immaterial and irrelevant and inadmissible for the purpose for which offered, and because there was better evidence to be obtained than the introduction of said letter and copy of said notice.

[10] We are of the opinion that the court properly overruled the objections and admitted said letter and notice in evidence for the purpose of establishing the fact that said bank was a guaranty fund bank, in that the printing of the notice was an official act, required to be made by the commissioner of banking, and the use of the words "Guaranty Fund Bank" on the letterhead of appellant bank was authorized by law for the purpose of giving general information that said bank was a guaranty fund bank, and therefore the act of publication made by the commissioner of banking, stating in effect that said bank was a guaranty fund bank, and the use of that term on the letterhead used by said bank, were prima facie evidence of the fact that said bank was a guaranty fund bank.

[11] The admission of the testimony of W. C. Head, president of appellant bank, to the effect that said bank was a guaranty fund bank, over appellant's objection that there was better evidence of that fact was properly overruled, and said evidence admitted, as the fact testified to by said witness rested within his knowledge, independent of the certificate issued by the commissioner on which was inscribed the statement that said bank was a guaranty fund bank; said certificate not being the only means or the best evidence by which to establish that fact.

Article 512 providing for the issuance by the commissioner of banking of a certificate of authority, "certifying that such state bank is authorized, under the laws of this state to engage in the banking business," when issued to a guaranty fund bank, is required to contain by said article the following statement on the face thereof, in bold type: "The noninterest bearing and unsecured deposits of this bank are protected by the state bank guaranty fund," which clearly indicates that the issuance of such certificate is for a dual purpose, first, to show that said institution is authorized under the laws of this state to engage in the banking business as determined by the state banking board; and, second, that the deposits of such bank are protected by the state bank guaranty fund. Such certificate is not issued concerning the act of incorporation of the institution to which issued, as its incorporation is required to be throught the Department of State. Articles 370-372, V. S. Ann. C. S. 1914. Therefore the certificate required to be issued by said article must have been for the purpose of conveying to the general public the information therein contained, so that parties dealing with said institution should be advised of the character, standing, and reliability of such institution for banking purposes, and the testimony of a witness cognizant of the facts thus intended to be conveyed and given to the public by such certificate is not secondary evidence.

This interpretation of the law as to the purpose for which certificate is required to be issued under the provisions of article 512 in our opinion is not only justified but required by article 511 of said bank act, to wit:

"All state banks transacting business in this state shall be required, on or after the first day of January, 1910, to hold a certificate of authority to transact a banking business issued by the commissioner, in compliance with the provisions of this chapter, and to keep same conspicuously posted at all times in the banking house where such business is transacted."

If the posting of the certificate required to be issued by said article 512 is not for the purpose of conveying information of the facts therein stated to the general public, then we are at a loss to understand what was intended to be accomplished by said requirement.

[12] The findings of fact by the trial court to the effect that appellee's claim was presented in time and in due form to the commissioner of banking is challenged by appellants on the ground that same is not supported by any evidence. We have carefully examined the statement of facts and reached the conclusion therefrom that the evidence before the trial court sustains said findings. In this connection we hold that the letter from W. L. Patterson, general liquidating agent of the department of bank-

ing, to Messrs. Bumpass & Wade, attorneys for appellee, of date February 19, 1923, reading as follows:

"In re Claim of Mrs. M. A. Mincher v. Farmers' State Bank, Mineola. This will acknowledge receipt of your lettter under date of February 16th, in reference to the deposit of the above party with the Mineola bank, as evidenced by its interest bearing certificate for two thousand dollars, issued to her on February 11, 1922. * * * Since the deposit was interest bearing, she will not share in the benefits of the guaranty fund, but will participate in the assets of the bank pro rata with all other general creditors * * *"

—was properly admitted in evidence for the purpose of showing that appellee's claim had been duly presented to and denied by the department of banking. The conclusions reached on the propositions discussed necessarily require all other propositions advanced by appellants to be, and the same are hereby, overruled.

[13] Owing to the many earnest and persistent efforts to apply a narrow, technical, strict construction to the application of the statutory provisions discussed, we feel constrained to make the following observation: That the bank depositor's guaranty law is a wise and beneficial piece of remedial legislation, we think, cannot be questioned. Therefore, in the construction and application of its terms, courts should be liberal. Guarded, however, by the general rules of statutory interpretation, to the end that the purpose for which it was enacted should be comprehended and accomplished, to wit, the protection of depositors as to their noninterest-bearing and unsecured deposits as same existed at the time of the closing of a bank in which such deposits had been made. This is clearly indicated, not only by the title of the act, but is, beyond the peradventure of a doubt, declared by its every provision. The necessity for the law did not rest in the need of banks or bankers for a remedy to relieve or protect them against a condition then prevailing, producing or inflicting upon them a wrong or injury in the legitimate or proper conduct of the banking business. It was not for the purpose of creating a tower of financial strength to attract in the interest of banks' depositors, so as to swell their resources, but rather for the purpose of furnishing ample protection for those dealing with banking institutions as depositors, to the end that no loss shall be sustained by them by reason of the unfaithfulness or the want of proper business ability or judgment on the part of those intrusted with the management of such institutions. Depositors were the helpless victims in the time of financial distress and disaster, being without that safeguard now secured, or at least intended to be secured to them, by the guaranty fund law, to wit, insuring them in the payment of their deposits whether the

bank favored by them should prove to be a reliable, trustworthy, and solvent institution or not. Given the strict, technical contruction contended for by attorneys for appellants would be but to bring the law in such disrepute with those for whose benefit same was primarily enacted as to be regarded by them as but a snare and a delusion, which no doubt would soon be followed by a popular demand for a speedy repeal, or provoke such general dissatisfaction and distrust on the part of depositors as to work a detriment to our state banks, a condition not intended to be produced by the law, and which would not arise under a proper interpretation and enforcement of its provisions. Such construction would be contrary to section 3, Final Title Revised Civil Statutes, which provides:

"That the rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this state respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

The observation made in 20 R. C. L. 755, anent the liberal construction that should be received by a remedial legislative enactment, we think peculiarly appropriate to be here quoted as an admonition against the strict construction urged to be placed on the bank deposit guaranty law by appellants:

"It has been thought, inasmuch as the statute is in derogation of the common law, that it should be given a strict construction, but the courts have very generally held that a spirit of liberality should characterize its interpretation for the reason that it is to be classed as remedial legislation. There are, however, reasonable limitations upon the rule, and the operation of the law should not be stretched by any extravagant principle of inclusion. On the other hand, the courts should be alert to check any reactionary tendencies, because a law, however much needed for the promotion of the public welfare, and however wisely framed, may be made so unsatisfactory by the spirit of it not sufficiently pervading its administration as to defeat its purpose and create danger of its abrogation and a return to the conditions which gave rise to the effort for relief. Though a court may profess adherence to the rule of liberality, some doubt must rest in respect of its sincerity, where decisions are in the closer cases against the statute, and where support for such decisions is sought in definition and references to lexicographers. To define is to limit, and a refinement of definition discloses opposition to the spirit of the act."

The above was made in reference to the construction that should be placed on the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 to 5246—91), but we think is just as applicable to the construction that should be placed on the bank depositors' guaranty act.

Not finding in the record any reversible

error in the proceedings leading up to the rendition of the judgment appealed from, the judgment of the court below is affirmed.

Affirmed.