

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

J1 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

December 31, 1984

Mr. Allen Parker, Sr.
Commissioner
Texas Department of Labor and
    Standards
P. O. Box 12157
Austin, Texas    78711

Opinion No. JM-293

Re:  Whether certain services
fall within the definition of
a "personnel service" under
article 5221a-7, V.T.C.S.

Dear Commissioner Parker:

You have requested our opinion of whether businesses which provide

> any or all of . . . [certain] additional services,
> either in conjunction with or instead of [a pre-
> pared resume and a list of preaddressed mailing
> labels of potential employees]. . . .

which were the sole services provided by the advanced fee resume service dealt with in Attorney General Opinion H-1236 (1978), are within the scope of the regulation of "personnel service" by article 5221a-7, V.T.C.S., as that term is defined in section 1(5).

> 'Personnel Service' means a person who for a fee
> or without a fee offers or attempts to <u>procure</u>
> <u>directly or indirectly</u> permanent employment for an
> <u>employee</u> or . . . for an <u>employer</u>. (Emphasis
> added).

For the reasons set forth below, we conclude that all the types of services about which you have asked fall within the ambit of the regulation of personnel employment services contained in article 5221a-7.

The additional services about which you inquire are as follows:

> [1] construction and implementation of a
> 'marketing plan' which may include psychological
> and/or aptitude testing to assist the applicant in
> identifying career or industry testing to assist

the applicant in identifying career or industry goals;

[2] how to get interviews, how to perform and negotiate during and after interviews;

[3] the provision of names of specific persons authorized to hire and looking for applicants

[4] the provision of information concerning work conditions, quality of employment, advancement probabilities, and income tax consequences;

[5] the granting of the right to contact the service at a later date for advice in connection with the job search; or

[6] direct contact by the service with hiring employers. . . .

We do not believe that the holding in Attorney General Opinion H-1236 (1978) is dispositive of whether the six types of services rendered by the businesses you have inquired about fall within the definition of a "personnel service."

Article 5221a-7, the current statute governing personnel employment services, and its predecessors -- Acts 1923, 38th Leg., ch. 41, at 75 (arts. 5208-5221); Acts 1943, 48th Leg., ch. 67, at 86 (art. 5221a-4); Acts 1949, 51st Leg., ch. 245, at 453 (art. 5221a-6); Acts 1969, 61st Leg., ch. 871, at 2625 (amended art. 5221a-6); and Acts 1979, 66th Leg., ch. 263, at 570 (art. 5221a-7) -- have been construed by this office a number of times. See, e.g., Attorney General Opinions MW-106 (1979); H-1236 (1978); H-629 (1975); M-750 (1970); WW-471 (1958); V-1035 (1950); V-430 (1947); O-7299 (1946); O-6879 (1945).

In 1945, this office construed article 5221a-4, which defined an "employment or labor agent," to include any person who

offers or attempts to procure or procures employment for employees . . . or . . . offers or attempts to procure or procures employees for employers. . . . (Emphasis added)

section 1(3)(e), as prohibiting the payment of fees by an applicant for employment unless

> the employment has been obtained . . . by the
> applicant. Any fee or charges made to or paid by
> the applicant prior to this event is contrary to
> and an attempt to circumvent the statute. The
> payment of fees are contingent upon obtaining
> employment . . . by the applicant.

Attorney General Opinion O-5879 (1945). This reasoning was affirmed in Attorney General Opinion O-7299 (1946) which, in holding that employers could be charged fees for certain services, found that

> the purpose of the act is to protect prospective
> employees who may be in severe need of employment
> from the stronger position of the employment
> agencies. . . . However, the agency cannot use
> this practice [charging employers certain fees] in
> such a way that the applicant is charged more than
> the legal fee.

Similarly, in again approving the charging of unregulated fees to employers for obtaining employees, as opposed to the statutory fees allowed by article 5221a-4 to be charged to employees for obtaining employment, this office pointed out that

> There can be no doubt that the underlying purpose
> of the statute is to protect those seeking
> employment from exploitation by an employment
> agency that might be tempted to take advantage of
> the vulnerability of the employment seeker.

Attorney General Opinion V-430 (1947).

In 1949 the legislature replaced article 5221a-4 with both the Private Employment Agency Act, article 5221a-6, and the Labor Agency Act, article 5221a-5. Acts 1949, 51st Leg., ch. 245, at 453 (art. 5221a-6); Acts 1949, 51st Leg., ch. 234, at 434 (art. 5221a-5). The first construction of article 5221a-6, which defined a private employment agent as anyone who "offers or attempts to <u>procure</u> employment for employees or procure[s] or attempts to <u>procure</u> employees for employers. . . ." section 1(a), noted that

> [T]he law seeks to place responsibility on the
> person or agency in actual contact with these
> persons [prospective employees] by requiring a
> license . . . [in order to regulate] actual
> procurement of and contact with applicant
> employees. . . .

Attorney General Opinion V-1035 (1950). Thereafter, this office had occasion to reiterate its previous holdings regarding the nature and scope of the regulation of private employment businesses by article 5221a-6 in Attorney General Opinion WW-471 (1958) as follows:

> The authority for private employment agents or agencies to charge fees for their services is provided in Section 8 of Article 5221a-6. It reads as follows:
>
>> 'Sec. 8. Private Employment Agents or Agencies as defined by this Act and who are engaged in the business of <u>attempting</u> to <u>procure</u> employment for employees <u>or procures</u> or attempts to <u>procure</u> employees for employers in skilled, professional, or clerical positions <u>may charge</u>, with the written consent of the applicant, <u>a fee, not to exceed forty per cent (40%) of the first month's salary, which may be collected from the applicant only after employment has been obtained and accepted by the applicant.</u>' (emphasis added throughout this opinion)
>
> The statute is free from ambiguities. The only fee which a licensed employment agent or agency is authorized to charge and collect from a job applicant is 40% of the first month's salary as set forth in Section 8 above.
>
> . . . .
>
> Clearly the intent of the Legislature was to authorize private employment agencies to charge a placement fee not to exceed forty (40) per centum of the applicant's first month's salary. No other fee of any sort is authorized by the statute and under no conditions can the authorized fee or any other fee, be charged prior to the applicant's obtaining and accepting employment.
>
> In the instant case the 'search fee' is charged the applicant prior to his obtaining and accepting employment and, in fact, the only purpose for the fee is to assist him in securing employment. That the parent organization is an out of state concern makes no difference. The whole mode of operation

> is designed to accomplish exactly what the statute
> intended to prevent, that is, the charging of any
> fee prior to the applicant's obtaining and
> accepting employment and the charging of a greater
> fee than that authorized by Section 8 of the
> statute.
>
> The opinion of this office is that the charging
> of a 'search fee' prior to the applicant's
> obtaining and accepting employment would amount to
> a registration fee and would be in violation of
> Article 5221a-6, Vernon's Civil Statutes, which
> prohibits a fee to be collected by a private
> employment agency prior to the applicant's
> obtaining and accepting employment.

Thus, when article 5221a-6 was amended in 1969, it had been the
consistent construction of this office that the purpose of the subject
regulatory scheme was to protect prospective employees from
overreaching by private employment agencies and that a key element of
that scheme was the unambiguous prohibition of such agencies from
charging or collecting any fee whatsoever prior to the obtaining of
employment by or for applicants. At that time the words "either
directly or indirectly" were added to the definition of a private
employment agency as set out in section 1(e) to modify and broaden
such an agency's legally defining purpose "to procure employment for
employees. . . ." V.T.C.S. art. 5221a-7, §1(5). Also, the limitation
on the authority of such an agency to charge any fee to an applicant
for employment, previously found in section 11 of article 5221a-4 and
then in section 8 of article 5221a-6 as originally enacted, was
reformulated in section 13(a)(1) of the amended article 5221a-6 to
prohibit the imposition of

> any fees for the registration of applicants for
> employment or any fee of applicants except for
> furnishing of employment obtained directly through
> the efforts of such agency; (Emphasis added).
>
> . . . .

Acts 1969, 61st Leg., supra, at 2630 (art. 5221a-6, §13(a)(1)).While
neither the words "either directly or indirectly" added to section
1(e), nor the restatement of the longstanding limitation on fees
charged to employees have been the subject of any specific analysis,
this office reaffirmed the holdings of Attorney General Opinions
O-7299 (1946) and V-430 (1947) that the basic purpose of the
predecessor statute, article 5221a-4, was to protect vulnerable
employment seekers from exploitation by overreaching employment

agencies. Attorney General Opinion M-750 (1970). In 1971, article 5221a-6, section 13(a)(1), was amended to prohibit

> any fees for the registration of applicants for employment or any other fee of applicants <u>except</u> for the furnishing of employment <u>referrals which result in the applicant obtaining employ-ment.</u> . . . (Emphasis added).

Acts 1971, 62nd Leg., ch. 772, at 2424. In 1975 this office reiterated Attorney General Opinion M-750's reaffirmation of the underlying purpose of the state's regulation of the private employment agency business. Attorney General Opinion H-629 (1975).

As you indicated, Attorney General Opinion H-1236 (1978) seems to suggest a limitation on the previously adopted scope of the statutory regulation. Even that opinion, however, recognized the breadth of the operative word "procure" in the definition of a "private employment agency" when it cited <u>Miller v. Eldridge</u>, 286 S.W. 999 (Tex. Civ. App. - Amarillo 1926, writ dism'd). Therein, the word "procure" is understood as Webster defined it: "'to bring about; to effect; to cause'. . . ." <u>Id.</u> at 1000. Hence, someone "procures" a thing when he is instrumental in bringing it about. When this verb is modified by the word "indirectly" there can be no doubt of the broad scope of the coverage of the statute.

> The word 'indirectly' is defined by Webster as 'not resulting directly from an act or cause but more or less remotely connected with or growing out of it.' This definition has received approval in <u>Amicable Life Ins. Co. v. O'Reilly</u>, Tex. Civ. App. 97 S.W.2d 246, 247, writ of error dismissed: '"indirect" means not direct . . . circuitous, oblique; as, an indirect road; not leading to an aim or result by the plainest cause or method or by obvious means, but obliquely or by <u>remote</u> means; roundabout; not resulting directly from an act or cause, but more or less <u>remotely connected with or growing out of it</u>. . . .'

<u>Maryland Casualty Co. v. Scharlack</u>, 31 F. Supp. 931 (S.D. Tex. 1939).

> The word 'indirectly' was before the Dallas Court of Civil Appeals in <u>Farmers' State Bank v. Mincher</u>, 267 S.W. 996. Citing that definition, the Supreme Court of <u>Nebraska in State v. Pielsticker</u>, 118 Neb. 419, 225, N.W. 51, 52, said: '"Indirectly" signifies the doing by an obscure

circuitous method something which is prohibited
from being done directly, and includes all methods
of doing the thing prohibited except the direct
one. Farmers' State Bank v. Mincher (Tex. Civ.
App.) 267 S.W. 996.' (Emphasis in original).

Amicable Life Insurance Co. v. O'Reilly, 97 S.W.2d 246 (Tex. Civ. App.
- Beaumont 1936, writ dism'd). Hence, the addition of the words
"either directly or indirectly" in the 1969 revision of the subject
statutory regulatory scheme served to reinforce the then quarter
century old construction of the purpose of the act.

Whether any one of the specific services about which you inquire,
either separately or in conjunction with other services, would bring a
business which offered it or them within the ambit of article 5221a-7
is a fact question and depends on the application of the standard set
out in the statute's definition of a "personnel service" to the
specific facts of any particular situation. Any business which
purports to attempt, even indirectly, to bring about the eventuality
of employment for a prospective employee is covered by article 5221a-7
and may not charge any fee except as a result of the applicant
obtaining employment.

## S U M M A R Y

Whether businesses which provide various
additional services beyond merely a prepaid resume
and a list of preaddressed mailing labels of
potential employees come within the scope of the
regulation of personnel employment services by
article 5221a-7, V.T.C.S., is a fact question. If
such services constitute offering or attempting to
be an instrumental cause in bringing about
employment for prospective employees, even if the
procurement of such employment is remotely
connected with such services, they are covered by
article 5221a-7, V.T.C.S.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Colin Carl
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison